UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | BANKRUPTCY NO. 20-10334 TPA |
| | : | |
| JOSEPH MARTIN THOMAS, | : | THE HONORABLE THOMAS P. AGRESTI |
| | : | |
| | : | CHAPTER 11 |
| | : | |

## **PLAN OF REORGANIZATION DATED FEBRUARY 15, 2021**

Joseph Martin Thomas (the "Debtor"), by and through his undersigned counsel,

propose this Plan of Reorganization, of which the following is a statement:

## **TABLE OF CONTENTS**

**Page**

|   |   |   |
|---|---|---|
| I. | Definitions | 2 |
| II. | General Terms and Conditions | 5 |
| III. | Classifications of Claims and Interests | 7 |
| IV. | Claims Not Impaired Under the Plan | 8 |
| V. | Claims Impaired Under the Plan | 9 |
| VI. | Means for Execution of the Plan | 11 |
| VII. | Means for Implementation of the Plan | 15 |
| VIII. | Cram-Down Provisions | 19 |
| IX. | Provisions for Acceptance and Rejection of Executory Contracts | 19 |
| X. | Provisions for Administration Expenses | 20 |
| XI. | Vote Required for Approval of the Plan | 20 |
| XII. | Discharge | 21 |
| XIII. | Retention of Jurisdiction | 21 |

I.      DEFINITIONS

The following terms when used in this Plan shall, unless the context otherwise requires, have the following meanings respectively:

Administrative Claim:  Any allowed claim entitled to priority under Section 507(a)(1) of the Code.

Allowed Claim:  A Claim, proof of which was or is timely filed with the Bankruptcy Clerk or which was scheduled by the Debtor as liquidated, undisputed, and non-contingent and as to which no objection has been made within the period of time fixed by the Bankruptcy Code, Bankruptcy Rules or Order of Court, or as to which Claim an objection is filed and resolved by a Final Order of the Bankruptcy Court to the extent determined in favor of the holder of such Claim.

Amendments to Schedules:  Amendments to the Debtor's Schedules of Assets and Liabilities.

Bankruptcy Rules:  The Federal and Local Rules of Bankruptcy Procedure, as amended.

Bar Date:  September 15, 2020, the deadline to file Proofs of Claim by non-governmental entities, and November 2, 2020, for governmental entities, as fixed by Order of Court dated May 22, 2020.

Case:  The case for the reorganization of individual, Joseph M. Thomas, commenced by voluntary Petition under Chapter 11 and filed on May 6, 2020.

Chapter 11:  Chapter 11 of the United States Bankruptcy Code.

Claim:  A duly listed and timely filed claim which is allowed and ordered paid by the Court.

Code:  The Bankruptcy Code as codified at 11 U.S.C. § 101 et seq.

Code Created Causes of Action:  Collectively, (a) causes of action, claims, rights, and remedies created by or arising under the Code, including but not limited to transfers avoidable and/or recoverable under Sections 542, 544, 547, 548, 549 and 550 of the Code; (b) causes of action, claims, rights and remedies in favor of the Debtor, the estate and creditors, against any third party; and (c) all of the recoveries and proceeds from (a) and (b).

Confirmation Date:  The date on which the Confirmation Order is docketed by the Clerk of the Bankruptcy Court.

Confirmation of the Plan:  The entry by this Court of an Order confirming the Plan.

Consummation of Plan:  Entry of an Order of consummation finally dismissing this case.

Confirmation Order:  An Order of the Bankruptcy Court confirming the Plan.

Court:  The United States Bankruptcy Court for the Western District of Pennsylvania.

Creditor:  Any person or entity having a claim against the Debtor.

Debtor:  Joseph M. Thomas, with an address c/o Tri-State Pain Institute, 2374 Village Common Drive, Erie, PA 16506.

Disclosure Statement:  The Disclosure Statement dated February 15, 2021.

Effective Date:  The date on which the Order confirming the Plan becomes final and non-appealable.

Estate:  The above-captioned Chapter 11 estate.

General Unsecured Claims:  Allowed, pre-Petition, general unsecured claims, not including Secured Claims, Administrative Claims or Priority Wages and Commissions.

General Unsecured Creditor:  A creditor holding a general unsecured Claim.

Petition:  The voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code filed by the Debtor on the Petition Date.

Petition Date:  May 6, 2020.

Plan:  This Plan of Reorganization in its present form or as it may be amended or supplemented.

Priority Taxes:  Any allowed tax claim entitled to priority treatment under Section 507(a)(8) of the Code (not including taxes which are Administrative Claims).

Proceeding:  The above-captioned reorganization proceeding.

Rejection Claim:  Any allowed claim arising from the Debtor's rejection of executory contracts and/or leases pursuant to Section 1123(b)(2).

Secured Creditor:  All creditors of the Debtor who hold a valid and perfected security interest as required by the laws of the Commonwealth of Pennsylvania with respect to real property and personal property owned by the Debtor.

Unclaimed Funds:  Distributions made pursuant to the Plan which are unclaimed after four (4) months.  Unclaimed funds shall include checks which have

been returned as undeliverable and funds for checks which have not been presented for payment.

Unsecured Creditor:  All creditors of the Debtor, excluding Secured Creditors, who have claims for unsecured debts, liabilities, demands or claims of any character whatsoever.

II.    GENERAL TERMS AND CONDITIONS

The following general terms and conditions apply to the Plan:

Claims:  Various types of claims are defined in the Plan.  The Plan is intended to deal with all claims against the Debtor of whatever character, and whether or not disputed, contingent or liquidated.  However, only allowed claims under the Code will receive the treatment afforded by the Plan.

Final Confirmation Order:  The Confirmation Order becomes final when it is no longer subject to any possible or further appeal.

Modifications to Plan:  This Plan may be modified by the Debtor or corrected prior to Confirmation without notice and hearing and without additional disclosure provided that, the Court finds that such modification does not materially or adversely affect any Creditor or Class of Creditors who has not accepted the modification.

No Liens:  The transfers and conveyances contemplated by the Plan shall be free and clear of any and all liens, encumbrances and claims against the Debtor (except as specifically provided for in the Plan) pursuant to Sections 363, 1123, and/or 1141 of the Bankruptcy Code.

No Transfer Taxes:  Any real estate transfer and conveyance under the

Plan shall be exempt from all real estate transfer taxes pursuant to 11 U.S.C. § 1146(a).

the recorder shall record such deed or deeds without any requirement of transfer taxes

from any source, including but not limited to, the lender, the Debtor, or the

purchaser(s)/transferee(s).

Notices Under Plan:  Notice to the Debtor under this Plan shall be given in

writing by certified mail at the following address:

If to Debtor:

Joseph Martin Thomas
c/of Tri-State Pain Institute
2374 Village Common Drive
Erie, PA 16506

With a copy to:
Michael P. Kruszewski, Esquire
The Quinn Law Firm
2222 West Grandview Boulevard
Erie, PA 16506-4508

Rule of Construction:  A definition in Article I that refers to the singular

includes the plural and a definition that refers to the plural includes the singular.

Securities Laws:  Any satisfaction provided to any creditor which may be

deemed to be a security is exempt from registration under federal and state securities

laws by virtue of the Code.

Severability:  Should the Court determine that any provision in the Plan is

either illegal on its face or illegal as applied to the facts of the case, subject to Section

1127 of the Code and Bankruptcy Rule 3019, such provision shall be unenforceable as

to all interested parties or as to the interested party or parties with respect to whom the

provision is held to be illegal. Such a determination by the Court shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

Time for Filing Claims:  All Creditors that are non-governmental entities were required to file their Proofs of Claim on or before September 15, 2020.  Creditors holding post-petition claims incurred in the ordinary course of the Debtor's business need not file claims and will be paid in full when the claims are due and payable. Professional fees and expenses will only be paid if approved by the Court after notice and a hearing.  The Debtor's professionals will file final fee applications within ninety (90) days after the date of the Confirmation Order.  All creditors are referred to in the Debtor's Disclosure Statement and applicable bankruptcy law for information concerning when and under what circumstances claims are legally deemed to be filed.

### III.    CLASSIFICATION OF CLAIMS AND INTERESTS

The claims and interests involved in this case shall be divided into the following classes:

Administrative claims:  Costs and expenses of administration as defined in the Code, including all administrative claims being debts incurred in the ordinary course of the Debtor's business since the filing of the Chapter 11 proceeding, for which final application for or allowance of a claim is filed within ninety (90) days after the date of the Confirmation Order as the same are allowed, approved, and ordered paid by this Court. It is anticipated that costs and expenses of administration will be approximately $399,000.00.

Class 1:  secured real estate claims

Class 2:  secured tax claims

Class 3:  secured collateral claims

Class 4:  unsecured priority tax claims

Class 5a:  general unsecured and unsecured tax claims, who have no collateral
to secure their claims

Class 5b:  unsecured claims, who have non-Debtor collateral securing their
claims


IV.   CLAIMS NOT IMPAIRED UNDER THE PLAN

Administrative Claims:  The administrative claims shall be paid in cash, in full,
beginning on the Effective Date of the Plan, or as otherwise agreed to by the claimant,
as and when their claims are allowed and ordered paid by the Court.  Administrative
claims shall be paid from the Debtor's escrow for administrative claims and/or from the
sale of real estate and/or personal property.  To the extent any balance remains due
after liquidation of assets, administrative claims shall be paid in full via regular monthly
installments over no longer than sixty (60) months.  Professional fees incurred for
services provided after the issuance of the final decree terminating this case shall be
the responsibility of the Debtor without Bankruptcy Court approval.

The administrative claims include the fees owed to the United States Trustee
pursuant to 28 U.S.C. § 1930(a).  The administrative claims shall also include the
payment of all United States Trustee quarterly fees incurred on a post-confirmation
basis until the case is closed, dismissed or converted to another chapter as required by
28 U.S.C. § 1930(a) as amended.

The administrative claims consist of the following:

| Professional | Amount Owed |
|---|---|
| The Quinn Law Firm | $212,000.00e |
| MacDonald Illig Jones & Britton | $107,000.00e |
| Schaffner, Knight, & Minnaugh | $15,000.00e |
| Graff & McGovern, LPA | $2,500.00e |
| Kenney, Shelton, Liptak, & Nowak LLP | $2,500.00e |
| Internal Revenue Service | $59,980.00e |
| **TOTAL** | **$398,980.00e** |

The administrative claims are not impaired under the Plan, and the holders of administrative claims are deemed to have accepted the Plan.

V.      CLAIMS IMPAIRED UNDER THE PLAN

Class 1:   The **secured real estate claims** of all Class 1 creditors, who are fully secured, shall be paid in cash, in full, from the sale of assets on which they have liens when sales occur.  To the extent that the value of the collateral is not sufficient to pay Class 1 creditors, any deficiency balance due will be treated as an unsecured claim.

The claims of Class 1 are impaired under the Plan and the holders of Class 1 claims are entitled to vote on the Plan.

Class 2:   The **secured tax claims** of all Class 2 creditors, who are fully secured, shall be paid in cash, in full, from the sale of assets on which they have liens when sales occur.  To the extent that the value of the collateral is not sufficient to pay Class 2

creditors in full, any deficiency balance due shall be paid in full, with interest, over sixty (60) months, beginning on the Effective Date of the Plan.

The claims of Class 2 are impaired under the Plan, and the holders of Class 2 claims are entitled to vote on the Plan.

Class 3:  The Debtor reserves the right to file an objection to any Class 3 Claims to determine the allowed amount, if any, and/or proper classification of such claim. After the allowed amount of any Class 3 Claims is determined, the **secured collateral claims** of all Class 3 creditors, to the extent they hold claims on collateral being retained by the Debtor, shall retain their liens and be paid in cash, in full, within sixty (60) months of the Effective Date of the Order confirming the Plan.  Class 3 creditors shall be paid from ongoing contractual payments beginning thirty (30) days from the Effective Date of the Plan, and/or as otherwise agreed by the creditor.

The claims of Class 3 are impaired under the Plan, and the holders of Class 3 claims are entitled to vote on the Plan.

Class 4:  The **unsecured priority tax claims** of all Class 4 creditors shall first be paid in order of priority from the sale of assets when they occur, to the extent that sufficient proceeds are available.  If Class 4 claims are not paid in full after Confirmation of the Plan, the remainder will be paid in full, with interest, in sixty (60) equal monthly installments, beginning on the Effective Date of the Plan.

Class 4 claims are impaired under the Plan, and the holders of Class 4 claims are entitled to vote on the Plan.

Class 5a:  Class 5a **general unsecured and unsecured tax claims, who have no collateral to secure their claims**, shall be paid the approximate amount of

$15,000.00 or more from personal asset sales, or approximately five (5%) of the total current Class 5a Claims.  Distribution percentage will increase/decrease if the amount of the allowed claims is reduced/increased because of, *inter alia*, the claims objection process, and/or as a result of successful/unsuccessful sales.

Class 5a claims are impaired under the Plan, and the holders of Class 5a claims are entitled to vote on the Plan.

Class 5b:  Class 5b **unsecured claims, who have non-Debtor collateral securing their claims**, shall be paid the approximate amount of $15,000.00 or more from personal asset sales, or approximately less than one per cent (<1%) of the total current Class 5b Claims.  Distribution percentage will increase/decrease if the amount of the allowed claims is reduced/increased because of, *inter alia*, non-Debtor asset sales, the claims objection process, and/or as a result of successful/unsuccessful sales.

Class 5b claims are impaired under the Plan, and the holders of Class 5b claims are entitled to vote on the Plan.

VI.    MEANS FOR EXECUTION OF THE PLAN

The Debtor will fund distributions under the terms of the Plan primarily from the liquidation of assets.  To the extent that the value of such assets is not sufficient to pay administrative and tax claims, the Debtor will fund installment payments due under the terms of the Plan from his current and future income. The Debtor shall make the following payments:

(a)    Administrative claims shall be paid from the Debtor's escrow for

administrative claims and/or from the sale of real estate and/or personal

property.  To the extent any balance remains due after liquidation of assets, administrative claims shall be paid in full via regular monthly installments over no longer than sixty (60) months, as follows:

|      | Claimant | Balance | Interest Rate | Monthly Payment |
|------|----------|---------|---------------|-----------------|
| i.   | Quinn Law Firm | $120,000.00e | 0% | $2,000.00 |
| ii.  | MacDonald Illig | $60,000.00e | 0% | $1,000.00 |
| iii. | Schaffner Knight | $0e | 0% | $0.00 |
| iv.  | Graff & McGovern | $0e | 0% | $0.00 |
| v.   | Kenney Shelton | $0e | 0% | $0.00 |
|      | **TOTAL** | | | **$3,000.00** |

(b)    The **secured real estate claims** of all Class 1 creditors, who are fully secured, shall be paid in cash, in full, from the sale of assets on which they have liens when sales occur.  To the extent that the value of the collateral is not sufficient to pay Class 1 creditors, any deficiency balance due will be treated as an unsecured claim.

(c)    The **secured tax claims** of all Class 2 creditors, who are fully secured, shall be paid in cash, in full, from the sale of assets on which they have liens when those sales occur.  It is anticipated that the Class 2 claims will, in fact, be paid in full from those sales.  In the unlikely event that the value of the collateral is not sufficient to pay Class 2 creditors in full, any deficiency balance due shall be paid in full, with interest, over sixty (60) months, beginning on the Effective Date of the Plan, and as estimated below:

| | Creditor | Collateral | Balance | Interest Rate | Monthly Payment |
|---|---|---|---|---|---|
| i. | Internal Revenue Service | Tax Lien | $275,976.77 | 3% | $4,000.00e |
| ii. | Pa. Dept. of Revenue | Tax Lien | $24,464.91 | 5% | $750.00e |
| | **TOTAL** | | | | **$4,750.00e** |

The aforementioned proposed payments to tax creditors represent amounts to be paid toward both their secured and unsecured priority claims.   The proposed payments have a built-in overage in the unlikely event that secured claims are not paid in full.  As such these proposed payments should be sufficient to pay residual secured claims.

(d)   The Debtor reserves the right to file an objection to any Class 3 Claims to determine the allowed amount, if any, and/or proper classification of such claim.  After the allowed amount of any Class 3 Claims is determined, the **secured collateral claims** of all Class 3 creditors, to the extent they hold claims on collateral being retained by the Debtor, shall retain their liens and be paid in cash, in full, within sixty (60) months of the Effective Date of the Order confirming the Plan.  Class 3 creditors shall be paid from ongoing contractual payments beginning thirty (30) days from the Effective Date of the Plan, as follows:

| | Creditor | Collateral | Balance | Interest Rate | Monthly Payment |
|---|---|---|---|---|---|
| i. | Ally Bank | 2016 Ford F-150 | $14,618.61 | 3.09% | $832.80 |
| | **TOTAL** | | | | **$832.80** |

(e)    The **unsecured priority tax claims** of all Class 4 creditors shall first be

paid in order of priority from the sale of assets when they occur, to the

extent that sufficient proceeds are available.  It is anticipated that the

Class 2 secured tax claims will be paid in full from those sales.  If Class 4

claims are not paid in full after confirmation of the Plan, the remainder will

be paid in full in sixty (60) equal monthly installments, beginning on the

Effective Date of the Plan, estimated as follows:

|      | Creditor | Balance | Interest Rate | Monthly Payment |
|------|----------|---------|---------------|-----------------|
| i.   | Internal Revenue Service | $113,241.29 | 3% | $4,000.00e |
| ii.  | Pa. Dept. of Revenue | $47,691.97 | 5% | $750.00e |
| iii. | Berkheimer | $8,083.00 | 5% | $200.00e |
| iv.  | New York State Department of Taxation and Finance | $598.11 | 0% | $0.00[1] |
|      | **TOTAL** | | | **$4,590.00e** |

The aforementioned proposed payments to tax creditors on account of

both their secured and unsecured priority claims have a built-in overage in

the unlikely event that secured claims are not paid in full.  As such these

proposed payments should be more than sufficient to pay unsecured

priority claims.

(f)    Class 5a **general unsecured and unsecured tax claims, who have no**

**collateral to secure their claims**, shall be paid the approximate amount

of $15,000.00 or more from personal asset sales, or approximately (5%) of

the total current Class 5a Claims.  Distribution percentage will

---

[1] To be paid in full within thirty (30) days of the Effective Date as de minimis.

increase/decrease if the amount of the allowed claims is

reduced/increased because of, *inter alia*, the claims objection process,

and/or as a result of successful/unsuccessful sales.

(g)    Class 5b **unsecured claims, who have non-Debtor collateral securing**

**their claims**, shall be paid the approximate amount of $15,000.00 from

personal asset sales, or approximately less than one per cent (<1%) of the

total estimated Class 5b Claims.  Distribution percentage will

increase/decrease if the amount of the allowed claims is

reduced/increased because of, *inter alia*, non-Debtor asset sales, the

claims objection process, and/or as a result of successful/unsuccessful

sales.


VII.    <u>MEANS FOR IMPLEMENTATION OF THE PLAN</u>

<u>Default</u>:  The Debtor shall be in default under the Plan if it fails to make

any payment required to be made under the Plan within thirty (30) days after it is due.

<u>Right to Cure</u>:  The Debtor shall have the right to cure any default under

the Plan within thirty (30) days after receiving written notice of default from the party

whose obligation is in default.

<u>Collection</u>:  Upon failure to cure any default under the Plan, the party

whose obligation is in default may take appropriate action to collect the amount due.

<u>Post-Confirmation</u>:  After the Confirmation Date, the Court will issue a

Post-Confirmation Order in accordance with the Bankruptcy Rules.  The Post-

Confirmation Order, amongst other things, will establish a deadline for interested parties

to file objections to claims.  Any claim which is not subject to a timely filed objection shall be allowed.

The Post-Confirmation Order, among other things, will also establish a deadline to file the Code Created Causes of Action and any other claims the Debtor may have.  If viable, the Debtor's attorney will file appropriate complaints in the Bankruptcy Court or other court of appropriate jurisdiction to pursue the Debtor's claims on behalf of the Estate.  The proceeds of any such action shall be used first to pay the reasonable attorney's fees and costs incurred in connection with pursuing the action; then to pay any outstanding fees for professionals who were not paid previously; then to pay creditors as required by the Plan in their order of priority.

No Professional Liability:  The professionals in the case, including but not limited to the attorney for the Debtor, shall not have, nor shall they incur any liability to the holder of any Claim against, or interest in, the Debtor, or any involved party for an act or omission in connection with or arising out of any aspect of the Case or Plan, or any property to be disbursed under the Plan, except for gross negligence or willful misconduct.

Management Post-Confirmation:  All property of the Estate will vest in the reorganized Debtor pursuant to Section 1141(b) of the Code subject to the terms of the Plan.  The Debtor will continue to manage their business after confirmation in accordance with pre-petition corporate structure(s).

Sale of Real Estate:  Any sale or transfer of property by the Debtor, whether occurring before or after the Confirmation Date, shall be pursuant to the Plan, and shall therefore be free from any and all stamp or similar transfer taxes pursuant to

16

Section 1146(a) of the Code.  The Debtor intend to sell his real property, subject to

Court approval as appropriate, and use the proceeds of sale to pay creditors in order of

priority under the Plan.  The Debtor intends to sell the properties identified as:

(1)     2374 Village Common Drive, Erie, Pennsylvania 16506 (non-Debtor

property)

(2)     Lot 15, (2368) Village Common Drive, Tax Index No. 33-123-418.0-

034.01, Erie, Pennsylvania 16506

(3)     2100 South Shore Drive, Erie, Pennsylvania 16505

Any such sale shall be free and clear of liens under 11 U.S.C §§ 363 and/or 1141(c)

and pursuant to the terms of this Plan as confirmed.  The sale or transfer of properties

under the Plan shall be free from any and all stamp or similar taxes pursuant to 11

U.S.C. § 1146(a).

Unclaimed Funds:  Unclaimed funds shall become property of the Estate,

subject to the Creditor's right to demand payment, if the demand is made within four (4)

months after the payment was initially tendered.  Unclaimed funds thereafter shall

become the property of the Estate to be used for professional fees, administrative

claims, and other claims as may be provided for in the Plan.

Objections to Claims, Lien Avoidance Actions, and Commencement of

Code Created Causes of Action:  The Debtor reserve the right under Section

1123(b)(3)(B) of the Code to pursue any and all claims and causes of action it may have

including, but not limited to, Code Created Causes of Action.  The Debtor also reserve

the right to object to and/or avoid the lien of any and all claims.  The listing of a claim in

a particular class in the Disclosure Statement and Plan does not constitute an

admission by the Debtor that such claim is properly in that class and does not constitute a waiver of the Debtor's right to object to such claim for any reason. Moreover, the listing of a claim in a particular amount does not mean that such claim will ultimately be allowed in that amount.

The Debtor specifically reserve the right to retain and seek to enforce, including but not limited to, the following claims:

| Party | Nature of Action |
|---|---|
| Wells Fargo | Any and all claims and causes of action the Debtor may have including, but not limited to, objections to claims, claims to determine secured status, lien avoidance actions, and causes of action under Chapter 5 of the Bankruptcy Code. |
| KADA Gallery | Any and all claims and causes of action the Debtor may have including, but not limited to, objections to claims, claims to determine secured status, lien avoidance actions, and causes of action under Chapter 5 of the Bankruptcy Code. |
| Ally Bank (Proof of Claim No. 3) | Any and all claims and causes of action the Debtor may have including, but not limited to, objections to claims, claims to determine secured status, lien avoidance actions, and causes of action under Chapter 5 of the Bankruptcy Code. |
| Mr. & Mrs. Steven Ribbing | Any and all claims and causes of action the Debtor may have including, but not limited to, objections to claims, claims to determine secured status, lien avoidance actions, and causes of action under Chapter 5 of the Bankruptcy Code |
| Ms. Barbara Noonan | Any and all claims and causes of action the Debtor may have including, but not limited to, objections to claims, claims to determine secured status, lien avoidance actions, and causes of action under Chapter 5 of the Bankruptcy Code |

VIII.   <u>CRAM-DOWN PROVISIONS</u>

If the Impaired Voting Classes (Classes 1 through 5b) fail to accept this Plan by the requisite majorities in number and amount as required by Section 1126 of the Code, the provisions of Section 1129(b) of the Code may be invoked by the Debtor, and the Debtor may move the Court to enter an Order confirming the Plan notwithstanding any such non-acceptance.

IX.   <u>PROVISION FOR ACCEPTANCE AND REJECTION OF EXECUTORY CONTRACTS</u>

The Debtor will assume the executory contracts and leases described on Exhibit "A" attached hereto, at the time of Confirmation.  The Debtor will cure the contracts and leases which are assumed.  Any executory contract or lease not specifically assumed under this Plan or pursuant to Section 365 of the Code will be deemed rejected. Rejection Claims must be filed by within forty-five (45) days after the Confirmation Date.

To the extent that any creditors have Rejection Claims arising from the Debtor's rejection of their executory contracts and/or leases pursuant to Section 1123(b)(2) of the Code, those unsecured claims shall be treated under Class 5a of this Plan and paid along with all other Class 5a Unsecured Creditors.

All other executory contracts which exist between the Debtor and any individual or entity whether said contract shall be in writing or oral which have not heretofore been rejected or heretofore been approved by Order of this Court are specifically rejected.

X.    <u>PROVISION FOR ADMINISTRATION EXPENSES</u>

All administration expenses deemed to be a priority under Section 507(a) of the

Code shall be paid in cash in full within thirty (30) days of Confirmation of the Plan, or as

otherwise agreed to by the claimant.  Administrative claims include the fees owed to the

United States Trustee pursuant to 28 U.S.C. § 1930(a).  Administrative claims shall also

include the payment of all United States Trustee quarterly fees incurred on a post-

confirmation basis until the case is closed, dismissed or converted to another chapter as

required by 28 U.S.C. § 1930(a) as amended.

It is estimated that the reasonable attorneys' fees and costs will be in the sum of

approximately $339,000.00.  It is also estimated that an administrative capital gains tax

claim will come due in the sum of up to $59,980.00.  Such costs and expenses shall be

paid from the Debtor's escrow for administrative claims and/or from the sale of real

estate and/or personal property.  To the extent any balance remains due after

liquidation of assets, administrative claims shall be paid in full via regular monthly

installments over no longer than sixty (60) months.  Legal fees incurred for services

provided after the issuance of the final decree terminating this case shall be the

responsibility of the Debtor without Bankruptcy Court approval.


XI.    <u>VOTE REQUIRED FOR APPROVAL OF THE PLAN</u>    AS A CREDITOR

OF THE DEBTOR, YOUR VOTE ON THE PLAN IS MOST IMPORTANT. IN ORDER

FOR THE PLAN TO BE ACCEPTED AND THEREAFTER CONFIRMED BY THE

BANKRUPTCY COURT, VOTES REPRESENTING TWO-THIRDS (2/3) IN AMOUNT

AND MORE THAN ONE-HALF (1/2) IN NUMBER OF CLAIMS ALLOWED FOR

VOTING PURPOSES OF ANY VOTING CLASS MUST BE CAST FOR ACCEPTANCE

OF THE PLAN. ONLY THOSE WHO ACTUALLY VOTE TO ACCEPT OR REJECT THE

PLAN WILL BE COUNTED FOR THIS PURPOSE.


     XII.   <u>DISCHARGE</u>

Completion of Payments discharges the Debtor from all debts provided for in the

Plan, whether or not the creditor files a Proof of Claim, whether or not the Creditor

accepts the Plan, and whether or not the Creditor's claim is allowed, except as provided

in Section 1141 of the Bankruptcy Code.  The Case shall be closed effective six (6)

calendar months from the entry of an Order of Confirmation of the Plan or upon entry of

a final decree.

When the Debtor completes the monthly payments under the Plan, the Debtor

shall file a motion with the Court seeking entry of discharge as provided in Section

1141(d)(5).  The Debtor need not pay in full all long term secured debt to seek a

discharge so long as any arrears are paid in full.


     XIII.   <u>RETENTION OF JURISDICTION</u>

The Court shall retain jurisdiction until this Plan has been fully consummated,

including, but not limited to, the following purposes:

     1.   The classification of the claim of any creditor and the reexamination

of claims that have been allowed for purposes of voting, and the determination of such

objections as may be filed to creditor's claims. The failure by the Debtor to object to, or

to examine any claim for the purposes of voting, shall not be deemed to be a waiver of the Debtor's right to object to, or reexamine the claim in whole or in part.

2. Determination of all questions and disputes regarding title to the assets of the estate, and the determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the date of confirmation, between the Debtor and any other party, including, but not limited to, any right of the Debtor to recover assets pursuant to the provisions of Title 11 of the United States Code.

3. The correction of any defects, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the order of confirmation as may be necessary to carry out the purposes and intent of this Plan.

4. The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code.

5. To enforce and interpret the terms and conditions of the Plan.

6. Entry of any order, including injunctions, necessary to enforce the title, right and powers of the Debtor and to impose such limitations, restrictions, terms, and conditions of such title, right and powers as this Court may deem necessary.

7. Entry of any order, concluding and terminating this Case.

8. To hear and determine causes of action by or against the Debtor arising prior to commencement of, or during the pendency of, these proceedings, including but not limited to causes of action by the Debtor under Sections 544, 547, 548 and/or 550 of the Code.

9.      To hear and determine any dispute arising under the Plan, including but not limited to any dispute regarding legal fees, and to consider any modification or amendment of the Plan.

10.     To enforce the discharge provisions of the Plan.

11.     At any time, the Court may issue Orders and give directives to the Debtor and other parties to implement the Plan pursuant to Section 1142 of the Code.

12.     For all other purposes to the extent that subject matter jurisdiction exists for this Court under the Code as currently enacted or subsequently amended.


Respectfully submitted,


JOSEPH MARTIN THOMAS, Debtor


*/s/   Joseph M. Thomas*
Joseph M. Thomas



THE QUINN LAW FIRM


BY:    */s/   Michael P. Kruszewski*
Michael P. Kruszewski, Esquire
PA Id. No. 91239
2222 West Grandview Boulevard
Erie, Pennsylvania 16506-4508
Telephone: 814-833-2222
Facsimile: 814-833-6753
E-Mail Address: mkruszewski@quinnfirm.com
Counsel for Debtor

EXHIBIT "A"

<u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES
BEING ASSUMED BY THE DEBTOR</u>


Commercial Lease Agreement with Medical Associates of Erie dated on or about February 12, 2021.