# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>TRI-STATE PAIN INSTITUTE, LLC,<br>        Debtor. | Bankruptcy No. 20-10049-TPA<br><br>Document No. _____ |
| In re:<br><br>DR. JOSEPH MARTIN THOMAS,<br>        Debtor. | Bankruptcy No. 20-10034-TPA<br><br>Document No. _____ |
| WELLS FARGO BANK NATIONAL ASSOCIATION,<br>        Wells Fargo,<br><br>vs.<br><br>TRI-STATE PAIN INSTITUTE, LLC, DR. JOSEPH MARTIN THOMAS, AND 2374 VILLAGE COMMON DRIVE, LLC,<br><br>Respondents. | Hearing Date: March 25, 2021<br>Response Deadline: March 18, 2021 |

**WELLS FARGO NATIONAL ASSOCIATION'S
OBJECTION TO DISCLOSURE STATEMENT OF DR. JOSEPH MARTIN THOMAS
(CM/ECF #266) AND OF TRI-STATE PAIN INSTITUTE, LLC (CM/ECF#416)**

AND NOW, comes Wells Fargo Bank National Association (the " "Wells Fargo" ), by and through its undersigned counsel, Bernstein-Burkley, P.C., files this *Objection to Disclosure Statements of Dr. Joseph Martin Thomas and Tri-State Pain Institute, LLC,* and in support thereof states as follows:

## FACTUAL BACKGROUND

1. On January 23, 2020 (the "TPI Petition Date"), Tri-State Pain Institute, LLC ("Tri-State Pain") filed a voluntary petition for relief under chapter 11 of the Title 11 of the

United States Code (the "Bankruptcy Code") in this Court at case number 20-10049-TPA (the "TPI Chapter 11 Case").

2. On February 14, 2020, the Office of the United States Trustee filed a notice in the TPI Chapter 11 Case of *Appointment of Committee of Unsecured Creditors* [Doc. No. 81].

3. On May 6, 2020, Dr. Joseph Martin Thomas ("Dr. Thomas") filed a voluntary petition for relief under chapter 11 of the Title 11 of the Bankruptcy Code in this Court at case number 20-10334-TPA (the "Dr. Thomas Chapter 11 Case").

4. On March 5, 2021, 2374 Village Common Drive, LLC ("2374 LLC", taken together with Tri-State Pain and Dr. Thomas, the "Debtors") filed a voluntary petition for relief under chapter 11 of the Title 11 of the Bankruptcy Code in this Court at case number 21-10118-TPA (the "2374 Chapter 11 Case", together with the TPI Chapter 11 Case, the Dr. Thomas Chapter 11 Case, collectively the "Chapter 11 Cases").

5. 2374 LLC is the entity that owns the commercial property, both the Tri-State Building and the Village Common Vacant Land Property out of which Tri-State Pain runs its operations (both properties are defined and described below). Tri-State Pain leases the properties from 2374 LLC.

6. These three Chapter 11 Cases are related. Dr. Thomas is the sole member of 2374 LLC and the Tri-State Pain.

7. Tri-State Pain filed its Chapter 11 Plan of Reorganization Dated February 15, 2021 (the "TPI Plan") [TPI Chapter 11 Case, Doc. No. 414] and its Disclosure Statement pursuant to 11 U.S.C. § 1125 ("TPI Disclosure Statement") [TPI Chapter 11 Case, Doc. No. 416]. The Court issued an *Order Scheduling Hearing on Disclosure Statement* [TPI Chapter 11

Case, Doc. No. 417] scheduling the hearing to consider the approval of the Tri-State Pain Disclosure Statement for **March 25, 2021,** with all objections due on or before **March 18, 2021.**

8. Dr. Thomas filed his Chapter 11 Plan of Reorganization Dated February 15, 2021 (the "Dr. Thomas Plan" together with the TPI Plan, the "Plans") [Dr. Thomas Chapter 11 Case, Doc. No. 266] and its Disclosure Statement pursuant to 11 U.S.C. § 1125 (the "Thomas Disclosure Statement", together with the Tri-State Disclosure Statement, the "Disclosure Statements") [Dr. Thomas Chapter 11 Case, Doc. No. 265]. The Court issued an *Order Scheduling Hearing on Disclosure Statement* [Dr. Thomas Chapter 11 Case, Doc. No. 269] scheduling the hearing to consider the approval of the Disclosure Statement for **March 25, 2021.**

9. 2374 LLC filed its Chapter 11 Plan of Reorganization Dated March 5, 2021 (the "2374 Plan") [2374 Chapter 11 Case, Doc. No. 6] and its Disclosure Statement pursuant to 11 U.S.C. § 1125 (the "2374 Disclosure Statement") [2374 Chapter 11 Case, Doc. No. 5]. The Court has not yet issued an order scheduling the hearing to consider the approval of the 2374 Disclosure Statement.

**The Tri-State Loan**

10. Prior to the commencement of the Case, the Debtor entered in that certain Promissory Note, dated on or about December 22, 2016 (the "Tri-State Note") with Wells Fargo in conjunction with a loan in the amount of $1,208,000 (the "Tri-State Loan").

11. Simultaneous with the execution of the Tri-State Loan, Joseph M. Thomas, M.D. ("Dr. Thomas") executed, among other things, an Open-end Mortgage and Security Agreement, dated December 22, 2016 (the "9830 Wattsburg Mortgage"), whereby Dr. Thomas granted to Wells Fargo a lien on that certain property with an address of 9830 Wattsburg Road, Erie, PA (Tax Parcel No. 25-016-043.0- 013.00) (the "9830 Wattsburg Property").

3

12. In conjunction with the Tri-State Loan, Dr. Thomas also executed, among other things, an Open-end Mortgage and Security Agreement, dated December 22, 2016 (the "Village Common Vacant Land Mortgage"), whereby Dr. Thomas grants to Wells Fargo a lien on that certain property with an address of land on Village Common Drive, Erie, PA (Tax Parcel No. 33-123-418-0034.01) (the "Village Common Vacant Land Property").

13. In conjunction with the Tri-State Loan, on December 22, 2016, Dr. Thomas executed a guaranty of the payment of Tri-State Note (the "Thomas Loan Guaranty").

14. Through a commercial security agreement executed on December 22, 2016 (the "Greater Erie Security Agreement"), Greater Erie Surgery Center, LLC granted Wells Fargo a security interest on all accounts and accounts receivable as well as equipment and inventory of Greater Erie Surgery Center, LLC, as additional security for the repayment of the Tri-State Note.

15. The Tri-State Note, Village Common Vacant Land Mortgage, 9830 Wattsburg Mortgage, the Thomas Tri-State Loan Guaranty, and the Greater Erie Commercial Security Agreement, taken together with all relevant loan documents, shall be referred to herein as the "Tri-State Loan Documents".

16. On October 23, 2020, Dr. Thomas filed a *Motion for Private Sale of Real Property Free and Divested of Liens* (the "Sale Motion") [Dr. Thomas Chapter 11 Case, Doc. No. 206] for the sale of the 9830 Wattsburg Property.

17. On November 25, 2020, the Court issued an Order Confirming Sale of Property Free and Divested of Liens (the "Sale Order") [Dr. Thomas Chapter 11 Case, Doc. No. 227]. Pursuant to the Sale Order, the Wells Fargo was to receive the net sale proceeds after various disbursement were made at closing to secured creditors, taxing authorities, and broker.

18. Wells Fargo received the total amount of $177,727.49 from the sale proceeds.

**Village Common Loan**

19. 2374 Village Common Drive, LLC executed that certain Promissory Note, dated December 20, 2016 (the "Village Common Note") with Wells Fargo in conjunction with a loan in the principal sum of $3,895,000 (the "Village Common Loan"). In conjunction with the Village Common Loan, 2374 Village Common Drive, LLC executed, among other things, a certain Open-end Mortgage and Security Agreement, dated December 30, 2016 (the "Tri-State Building Mortgage"), whereby 2374 Village Common Drive, LLC granted to Wells Fargo a lien on that certain real property with an address of 2374 Village Common Drive, Erie, PA (Tax Parcel No. (33) 123-418-34) (the "Tri-State Building").

20. On December 30, 2016, the Tri-State Pain, Greater Erie Surgery Center, LLC and Dr. Thomas each executed a guaranty of the payment of Village Common Note (the "Village Common Loan Guaranties").

21. Through certain commercial security agreements executed on December 30, 2016 (the "Tri-State Pain and 2374 Village Commercial Security Agreements"), Tri-State Pain and 2374 Village Common Drive, LLC granted Wells Fargo a security interest on all accounts and accounts receivable as well as equipment and inventory of Debtor and 2374 Village Common Drive, LLC, respectively.

22. The Village Common Note, Tri-State Building Mortgage, Village Common Loan Guaranties, and the Tri-State Pain and 2374 Village Common Drive Commercial Security Agreements, taken together with all relevant loan documents, shall be referred to herein as the "Village Common Loan Documents".

\*\*\*

23. On June 15, 2020, the Wells Fargo filed a proof of claim I the TPI Chapter 11 Case in the total amount of $3,603,147.10 at Claim No. 9 arising out of the Village Common Loan Guaranties of the Village Common Note and a proof of claim in the total amount of $748,173.67 at Claim No. 10 arising out of the Tri-State Pain's direct obligation, as borrower, to pay the Tri-State Loan.

24. On September 14, 2020, the Wells Fargo filed a proof of claim in Dr. Thomas Chapter 11 Case in the total amount of $3,583,355.51 at Claim No. 22 arising out of Dr. Thomas's personal guaranty of the Village Common Note and a proof of claim in the amount of $572,793.98 at Claim No. 23 arising out of Dr. Thomas's personal guaranty of the Tri-State Note.

25. Interest, fees and expenses continue to accrue under the Tri-State Loan and Village Common Loan, and as of February 15, 2021, the total amount owed to the Wells Fargo under the Tri-State Loan is $439,660.00 and under the Village Common Loan is $3,643,823.00.

26. The Debtors have failed to make payments on the Tri-State Loan since August 2020 and on the Village Common Loan since October 2020 to the Wells Fargo pursuant to the terms of the various loan documents and the *Final Order Authorizing Use of Cash Collateral* (the "Cash Collateral Order") [TPI Chapter 11 Case, Doc. No. 148].

27. Thus, the Debtors are in **default** of the various loan documents and the Cash Collateral Order.

28. The Debtors indicate in their Plans that there is a tentative offer to sell the Village Common Land Property, the Village Drive Property (with no equipment) for the total amount of $3,150,000.00 by Joseph C. Kramer (the "Tentative Offer") that would act as a "stalking horse"

6

bid ($3,000,000 for the Village Drive Property and $150,000 for the Village Common Land Property).

29. To date, the Wells Fargo has not seen a finalized offer from Joseph C. Kramer and is not aware or any higher or better offers. Wells Fargo has repeatedly informed the Debtors that it does not support or consent to a sale to Mr. Kramer under the terms of the Tentative Offer. Wells Fargo does not consent to pay enormous administrative fees ($250,000) as a carve-out to go through a 363 sales process.

## **OBJECTION TO DISCLOSURE STATEMENTS**

30. Wells Fargo objects to these Plans because they do not provide "adequate information" from which Wells Fargo or any other creditor can make an informed decision about the Plans in the Chapter 11Bankruptcies. The Plans were not proposed in good faith and glaringly lack feasibility and any likelihood of reorganization give the Projections provided.

31. The Code provides that a disclosure statement must contain "adequate information "sufficient for a hypothetical reasonable investor to make an 'informed judgment'" about the plan. 11 U.S.C. §1125(a)(1). "The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the code standard of adequate information." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416-418 (3d Cir. 1988) (internal quotations marks omitted). What constitutes "adequate information" is determined by the facts and circumstances of the case. *Oneida*, 848 F.2d at 417.

32. Moreover, Courts have recognized that if it appears that there is a defect that makes a plan inherently or patently unconfirmable the Court may consider and resolve that issue at the disclosure stage before requiring the parties to proceed with solicitation of acceptances and

rejections and a contested confirmation hearing. *In re American Capital Equipment, LLC*, 688 F.3d 145, 154 (3d Cir. Pa. 2012).

33. The Disclosure Statements describe Plans that are not confirmable on their face. In order to confirm a plan of reorganization, the plan must satisfy the requirements set forth in Section 1129(a), with the exception of Section 1129(a)(8). *In re South Canaan Cellular* Investm*ents, Inc.*, 427 B.R. 44, 60 (Bankr. E.D. Pa. 2010). The Debtors bear the burden of proving by a preponderance of the evidence that all of the requirements of Section 1129 are met. *In re Rubicon U.S. REIT, Inc.*, 434 B.R. 168, 174 (Bankr. D. Del. 2010).

**Lack of Good Faith**

34. Section 1129(a)(3) of the Bankruptcy Code requires that the plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3).

35. Courts take a substantive view (as opposed to courts in other circuits that look to the process behind proposing the plan) when determining whether the plan meets the "proposed in good faith and not by any means forbidden by law" test of Section 1129(a)(3). *In re Manchester Oaks Homeowners Ass'n, Inc.*, No. 11-10179-BFK, 2014 WL 961167, at *11 (Bankr. E.D. Va. Mar. 12, 2014) (*citing In re Walker*, 165 B.R. 994, 1001 (E.D.Va.1994) ("[W]hether a plan is filed in good faith is a matter to be assessed in view of the totality of the circumstances which necessitated the plan, in perspective of the purposes of the Bankruptcy Code[;]" additional citations omitted).

36. These Chapter 11 Cases have been lingering for over a year with no end in sight for a realistic way out of the Debtors' cash flow problems.

37. Wells Fargo respectfully submits that the Plans to reorganize at this juncture have not been proposed in good faith and they have very little likelihood that they will succeed.

38. The filing of the Plans appear to be a tactic to delay inevitable liquidations.

39. The most important feature of the Plans and Disclosure Statements involves the sale of the Tri-State Building and the 2374 Village Common Vacant Land.

40. Wells Fargo does not consent to such a sale on the terms as proposed in the Plans and Disclosure Statements. Wells Fargo incorporates herein in its entirety that certain motion for relief from stay pursuant to 11 U.S.C. Section 362 or alternative dismissal or conversion of a case or appointment of Chapter 11 Trustee, filed in all three Chapter 11 Cases (CM/ECF #451, filed on 03/10/2021), the "Lift Stay Motion"), currently scheduled to be heard for April 25, 2021. In the Lift Stay Motion, Wells Fargo set forth its rationale for its dissent.

41. The Plans and Disclosure Statement inaccurately report an initial bid of $3,400,000 for the Tri-State Building and adjacent 2374 Village Common Vacant Land. Upon information and belief, the Kramer bid has been reduced to $3,150,000.

42. Wells Fargo does not consent to the proposed carve-out of the $250,000 to be set-aside for payment for the attorney's compensation in these Chapter 11 Cases. See TSI Disclosure Statement, p. 3.

43. The Class 4 Claims of Wells Fargo is not accurate. Such claim should be at least $3.64 million, not $3.50 million on the 2374 Village Common Loan. Wells Fargo reserves any and all rights to amend this clam. This amount also does not reflect the $29,000 cash payment directed by this Court for 2374 Village Common Drive, LLC to make on the 2374 Village Common Loan. Such payment has not yet been made. See TSPI Disclosure Statement, p. 3.

44. The Class 5 Claim of Wells Fargo is also not accurate. This claim is around $439,000, not the $424,000 set forth in the Tri-State Disclosure Statement. Wells Fargo reserves any and all rights to amend this claim. See TSPI Disclosure Statement, p. 4.

9

45. In Dr. Thomas's Chapter 11 Case, Dr. Thomas understates his objection listing a claim amount of $415,000, when the amount is over $439,000. See Dr. Thomas Disclosure Statement, p. 15.

### Not Feasible and Thus Patently Unconfirmable

46. Section 1129 of the Code requires that a bankruptcy court must find that the proposed plan is feasible or likely to succeed. Specifically, Section 1129(a)(11) provides, "The court shall confirm a plan only if all of the following requirements are met: Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

47. A debtor must prove the ability to raise sufficient revenues to cover expenses and creditor payments. The Tri-State Plan fails entirely in that regard.

48. The Tri-State Plan's most glaring defect of the Tri-State Plan and Disclosure Statement is the Projected Profit & Loss Statement attached as an Exhibit for the period February 2021 through January 2022 (the "Projection").

49. This projects significant negative monthly cash flows and evidences a likelihood that Dr. Thomas will not be able to cover expenses without a significant alteration of his business plan. Other than a move to a new location, creditors are not provided with that information. Notably, the Projection also does not account for the proposed remittance to Wells Fargo of $2,763 by Tri-State Pain on behalf of the Greater Erie equipment.

50. In the Dr. Thomas Disclosure Statement, Dr. Thomas admits that "with probable changes to Dr. Thomas current business model, his present and anticipated compensation becomes very uncertain." Dr. Thomas Disclosure Statement, p. 2.

51. Dr. Thomas's Plan is as equally troubling. The Dr. Thomas Disclosure Statement states expressly that the Debtor currently has no projected disposable income but may have some non-exempt equity in assets. This equity is also "highly speculative" because it is wholly dependent on the purchase price for the sale of his home. See Dr. Thomas Disclosure Statement, p. 24. Dr. Thomas' Plan is also dependent upon a successful sale of the Tri-State Building and adjacent vacant lot.

\*\*\*

52. At the same time, Wells Fargo joins in the other objections to the Disclosure Statement that are being filed simultaneously herewith, including but not limited to the objections filed by TIAA Finance.

## RESERVATION OF RIGHTS

Wells Fargo submits this Objection without prejudice to, and with full reservation of, their rights to supplement this Objection in advance of or in connection with the Confirmation Hearing. Wells Fargo reserves (and nothing herein shall constitute a waiver, expressly or implicitly, of) all rights under the Bankruptcy Code or applicable non-bankruptcy law, including rights to object to any subsequent amendments to the Plans, and seek any other or supplemental relief. Wells Fargo further reserves (and nothing herein shall constitute a waiver, expressly or implicitly, of) all rights to introduce or otherwise use any and all evidence elicited through discovery in the above-captioned case in support of any of the objections raised herein or by supplement to this Objection.

## CONCLUSION

WHEREFORE, Wells Fargo respectfully submits the foregoing Objection to the Disclosure Statements relating to the Tri-State Plan and the Dr. Thomas Plan and prays for the entry of an order denying approval of the same or granting such other relief as may be fair and just.

Dated: March 18, 2021

Respectfully submitted,

BERNSTEIN-BURKLEY, P.C.

By: /s/ *Salene Mazur Kraemer*
Salene Mazur Kraemer, Esq. PA I.D. #86422
skraemer@bernsteinlaw.com
707 Grant Street, Suite 2200
Pittsburgh, PA 15219
Phone: (412)456-8100
Fax:    (412) 456-8135

*Counsel for Wells Fargo Bank National Association*