### UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | BANKRUPTCY NO. 20-10334 TPA |
| | : | |
| JOSEPH MARTIN THOMAS, | : | THE HONORABLE THOMAS P. AGRESTI |
| Debtor. | : | |
| | : | CHAPTER 11 |
| | : | |

### DISCLOSURE STATEMENT
### TO ACCOMPANY AMENDED PLAN DATED APRIL 1, 2021

☐ Chapter 11 Small Business (Check only if debtor has elected to be considered a small business under 11 U.S.C. § 1121(e)).

Debtor furnishes this disclosure statement to creditors in the above-captioned matter pursuant to Bankruptcy Code § 1125 to assist them in evaluating debtor's proposed Amended Chapter 11 plan, a copy of which is attached hereto.  Creditors may vote for or against the plan of reorganization.  Creditors who wish to vote must complete their ballots and return them to the following address before the deadline noted in the order approving the disclosure statement and fixing time.  The Court will schedule a hearing on the plan pursuant to 11 U.S.C. § 1129).

<u>Address for return of ballots:</u>

**Michael P. Kruszewski, Esquire**
**The Quinn Law Firm**
**2222 West Grandview Blvd.**
**Erie, PA 16506**

I.    **Background**

    1.    Name of Debtor:  **Joseph Martin Thomas, M.D.**

    2.    Type of Debtor (individual, partnership, corporation):  **Individual**

    3.    Debtor's Business or Employment:  **The Debtor is a physician.  He is the sole member of and currently maintains his medical practice at Tri-State Pain Institute, LLC ("Tri-State").  The Debtor is also the majority member of Greater Erie Surgery Center, LLC ("GESC"), which operates out of the same building as Tri-State.**

#1430906

4.      Date of Chapter 11 Petition:  **May 6, 2020**

5.      Events that Caused the Filing:  **The Debtor and Tri-State, while being successful in their industry, were faced with severe cash-flow issues caused, in part, by Tri-State's previously poor management, for which those responsible have since been removed.  The Debtor and Tri-State also faced significant litigation that they struggled to manage efficiently while continuing to operate.  This caused a tremendous strain on their business as well as an increase in expenses to defend said litigation.  Eventually Tri-State was forced to file a Ch. 11 Bankruptcy at Case No. 20-10049-TPA (the "Tri-State Case") to attempt to manage decreasing revenues and subsequent default on debt.  The Tri-State Case also provided a vehicle to attempt to economically mediate the aforesaid litigation.  The Debtor later filed the above-captioned Bankruptcy Case due to a reduction in compensation caused by the Tri-State Case, combined with the need to join in the mediation of litigation and to liquidate assets free and clear of liens for the benefit of creditors.**

6.      Anticipated Future of the Company & Source of this Information and Opinion:

**The Debtor intends to relocate with Tri-State to a new space leased from Medical Associates of Erie and sell or surrender his remaining business assets.  The Debtor is selling the medical facility located at 2374 Village Common Drive, which is owned by his real estate holding company, 2374 Village Common Drive, LLC ("2374"), in which he is the sole member.  The future of his businesses will be largely determined by the aforementioned relocation efforts, and any sale efforts may provide further benefit to the Estate.  In the process GESC has closed its doors.  2374 has also filed its own Ch. 11 Bankruptcy at Case No. 21-10118-TPA (the "2374 Case") to facilitate the sale of the real estate free and clear of liens.  But Tri-State and Dr. Thomas will continue downsized operations at a new location.**

**Otherwise, the Debtor is an individual wage earner.  He will continue his efforts to liquidate personal assets in order to reduce personal expenses accordingly.  Hopefully this will afford him the ability to pay ongoing expenses and anticipated plan payments over time.  However, with probable changes to his current business model, his present and anticipated compensation becomes very uncertain.  As a result, the Debtor will seek to pay creditors from the liquidation of**

#1430906

**certain personal assets, as well as from any carve-out from the sale of his business assets.**

7.    Summarize all Significant Features of the Plan Including when and How Each Class of Creditor Will Be Paid and What, If Any, Liens Will Be Retained by Secured Creditors or Granted to Any Creditor Under the Plan:

### Sale of 9830 Wattsburg Rd.

The Debtor has sold that real estate titled to him personally located at 9830 Wattsburg Rd. (See Doc. No. 242).  He had previously engaged a realtor for these purposes (See Doc. No. 173).  From that sale, for which the purchase price was **$299,900.00**, the Debtor paid the following claimants:

> Municipal Claims **$13,734.22**
> PNC Bank **$67,170.54**
> Administrative Claims **$21,450.00**
> Wells Fargo **$177,727.49**

Any payment to Wells Fargo from this sale thereby reduced amounts owed by Tri-State, therefore providing a benefit to the Tri-State Case.  Payments to Wells Fargo have also been made by 2374 pursuant to its lease of the building to Tri-State and GESC.

### Sale of 2374 Village Common Drive & Lot 15, (2368) Village Common Drive

The Debtor is selling that real estate located at 2374 Village Common Drive, titled to 2374, and located at Lot 15, (2368) Village Common Drive, titled to him personally. A Sale Hearing is currently scheduled for April 28, 2021 (See Doc. Nos. 49 & 50), and Bid Procedures have been approved for the purposes of receiving higher and better offers at the time of sale (See Doc. No. 76).  ***The proposed sale may also be subject to the objection and/or credit bid of Wells Fargo***.

The Debtor had previously engaged a realtor for the purposes of selling this real estate, who was approved for the listing of Lot 15, (2368) Village Common Drive (See Doc. No. 173) and for the brokering of any overbid with respect to the sale of 2374 Village Common Drive (See 2374 Case Doc. No. 72).  Any final approval for the commission on 2374 Village Common Drive remains subject to this Court's review in the 2374 Case.

From these sales, for which the Debtor currently has an aggregate purchase offer of **$3,150,000.00**, the Debtor estimates paying the following claimants:

#1430906

3

> 2374 Village Common Drive **$3,000,000.00e**
> Tax Collector(s) **$590,000.00e**
> Proposed Carve-Out for Administrative Claims **$100,000.00e**
> (estimated costs of sale among affiliated Debtors)
> Wells Fargo **$2,385,000.00e**
>
> Lot 15, (2368) Village Common Drive **$150,000.00**
> Tax Collector(s) **$5,000.00e**
> Administrative Claims **$15,000.00e**
> Wells Fargo **$100,000.00e**

It is proposed that Wells Fargo will also be paid from any sale or contribution to Tri-State of equipment owned by GESC, the aggregate of which may be valued as high as $200,000.00, as well as from any remaining assets of 2374. Any pay down of debt and carve-out from sale proceeds, which is still being negotiated, will provide an added benefit to the Estate(s). If Wells Fargo successfully credit bids or continues to object to the sale, it is anticipated the Wells Fargo will take ownership of the real estate or otherwise foreclose. Additionally, TIAA will repossess its equipment pursuant to relief from stay unless any potential buyer also wishes to procure the same in a timely manner.

## Sale of 2100 South Shore Drive

The Debtor has an agreement to sell that real estate titled to him personally located at 2100 South Shore Drive. He had previously engaged a realtor for this purpose (See Doc. No. 184). From this sale, for which the current purchase price is **$1,065,000.00**, the Debtor intends to pay the following claimants:

> Tax Collector(s) **$39,000.00e**
> PNC Bank **$635,000.00e**
> IRS **$250,000.00e**
> PA Dept. of Revenue **$21,500.00e**
> Administrative Claims **$46,000.00e**

## Sale of Personal Property

The Debtor also intends to hire Dargate Auction Galleries, whose Retention Application is pending at Doc. Nos. 345 & 346, to sell for the benefit of creditors certain personal property, including but not limited to paintings, antiques, and/or collectibles, which could garner a net aggregate purchase price of approximately **$300,000.00** or more. From those sales, the Debtor intends to pay down the following creditors:

#1430906

[1]     ~~IRS **$250,000.00e**~~
~~PA Dept. of Revenue **$21,500.00e**~~
Administrative Claims **$100,000.00e**
Unsecured Priority Creditors **$169,000.00e**
General Unsecured Creditors **$30,000.00e**

**In conjunction with the foregoing, each Class of Creditors will be paid as follows:**

(a)     **Administrative Claims**:  The costs and expenses of administration shall be paid in cash, in full, from the Debtor's income as approved by the Court and/or from the sale of assets when they occur.  If administrative claims are not paid in full after confirmation of the Plan, the remainder will be paid within sixty (60) months or less, beginning on the Effective Date of the Plan.  Legal fees incurred for services provided after the issuance of any final decree terminating this Case shall be the responsibility of the Debtor without Bankruptcy Court approval.

(b)     **Class 1**:  The **secured real estate claims** of all Class 1 creditors, who are fully secured, shall be paid in cash, in full, from the sale of assets on which they have liens when sales occur.  To the extent that the value of the collateral is not sufficient to pay Class 1 creditors, any deficiency balance due will be treated as an unsecured claim.

(c)     **Class 2**:  The **secured tax claims** of all Class 2 creditors, who are fully secured, shall be paid in cash, in full, from the sale of assets on which they have liens when those sales occur.  It is anticipated that the Class 2 claims will, in fact, be paid in full from those sales.  In the unlikely event that the value of the collateral is not sufficient to pay Class 2 creditors in full, any deficiency balance due shall be paid in full, with interest, over sixty (60) months, beginning on the Effective Date of the Plan, and as more particularly set forth below:

(i)     The Debtor will pay the Internal Revenue Service *secured and unsecured priority* claims, together with interest at the rate of three percent (3%) per year in sixty (60) monthly installments of approximately $4,000.00/mo.

(ii)     The Debtor will pay the Pennsylvania Dept. of Revenue *secured and unsecured priority* claims together with interest at the rate of five percent (5%) per year in sixty (60) month installments of approximately $750.00/mo.

---

[1] Strikethrough denotes could be paid in full from prior sale.

The aforementioned proposed payments to tax creditors on account of both their secured and unsecured priority claims have a built-in overage in the unlikely event that secured claims are not paid in full.  As such these proposed payments should be sufficient to pay residual secured claims.

(d)     **Class 3**:  The Debtor reserves the right to file an objection to any Class 3 Claims to determine the allowed amount, if any, and/or proper classification of such claim.  After the allowed amount of any Class 3 Claims is determined, the **secured collateral claims** of all Class 3 creditors, to the extent they hold claims on collateral being retained by the Debtor, shall retain their liens and be paid in cash, in full, within sixty (60) months of the Effective Date of the Order confirming the Plan.  Class 3 creditors shall be paid from ongoing contractual payments beginning thirty (30) days from the Effective Date of the Plan.

(e)     **Class 4**:  The **unsecured priority tax claims** of all Class 4 creditors shall first be paid in order of priority from the sale of assets when they occur, to the extent that sufficient proceeds are available.  It is anticipated that the Class 2 secured tax claims will be paid in full from those sales.  If Class 4 claims are not paid in full after confirmation of the Plan, the remainder will be paid in full, with interest, in sixty (60) equal monthly installments, beginning on the Effective Date of the Plan, and as more particularly set forth below:

(i)     The Debtor will pay the Internal Revenue Service *secured and unsecured priority* claims in full, together with interest at the rate of three percent (3%) per year, in sixty (60) monthly installments of approximately $4,000.00/mo.

(ii)    The Debtor will pay the Pennsylvania Dept. of Revenue *secured and unsecured* priority claims in full, together with interest at the rate of five percent (5%) per year, in sixty (60) month installments of approximately $750.00/mo.

(iii)   The Debtor will pay the Berkheimer unsecured priority claim in full, together with interest at the rate of five (5%) per year, in sixty (60) monthly installments of approximately $152.54.

The aforementioned proposed payments to tax creditors on account of both their secured and unsecured priority claims have a built-in overage in the unlikely event that secured claims are not paid in full.  As such these proposed payments should be more than sufficient to pay unsecured priority claims.

#1430906

(f)    **Class 5a**:  Class 5a **general unsecured and unsecured tax claims that are equal to or less than $20,000.00**. Class 5a shall consist of Allowed Unsecured Claims that are less than or equal to $20,000.00, plus Allowed Unsecured Claims that are greater than $20,000.00 but are reduced down to $1,000.00 by one or more of the other Unsecured Creditors so as to be included in this Class 5a convenience class.  Class 5a creditors shall be paid the lesser of $1,000 or their entire claim with thirty (30) days of the Effective Date of the Plan. The percentage distribution to each Creditor in Class 5a who elects to receive $1,000.00 should be *at least* five percent (5%) of their claim, but in no event shall any convenience Claim exceed $1,000.00 for purposes of allowance, treatment or distribution under this Plan.  The opportunity for an Unsecured Creditor to make such an election will be included on the Ballot used by Creditors to vote for or against the Plan.

(g)    **Class 5b**:  Class 5b **unsecured claims that are greater than $20,000.00**.   Class 5b shall consist of Allowed General Unsecured Claims that are greater than $20,000.00, which Class shall be paid the approximate aggregate amount of $20,000.00 or more from personal asset sales, or approximately less than one per cent (< 1%) of the total estimated Class 5b Claims.  Distribution percentage will increase/decrease if the amount of the allowed claims is reduced/increased because of, *inter alia*, non-Debtor asset sales, the claims objection process, and/or as a result of successful/unsuccessful sales.

8.    Are all Monthly Operating Statements current and on file with the Clerk of Court?

☒ Yes    ☐ No

If Not, Explain:

9.    Does the plan provide for releases of non-debtor parties?  Specify which parties and terms of release.

No.

10.    Identify all executory contracts that are to be assumed or assumed and assigned.

None.

11.    Has a bar date been set?  (If not, a motion to set the bar date has been

#1430906

filed simultaneously with the filing of this disclosure statement.)

☒ Yes    ☐ No

12. Has an election under 11 U.S.C. § 1121(e) been filed with the Court to be treated as a small business?

☐ Yes    ☒ No

13. Specify property that will be transferred subject to 11 U.S.C. § 1146(a).

Debtor intends to liquidate the following property:

| (a) | 2100 South Shore Drive, Erie, Pennsylvania 16505 |
| (b) | Lot 15, (2368) Village Common Drive, Tax Index No. 33-123-418.0-034.01, Erie,  Pennsylvania 16506 |
| (c) | 2374 Village Common Drive, Erie, Pennsylvania 16506 (non-Debtor property) |

**II.**   **Creditors**

A.   Secured Claims

## SECURED CLAIMS

| Creditor | Total Amount Owed | Arrearages | Type of Collateral Priority of Lien (1, 2, 3) | (D) (L) (U)* | Will Liens be Retained Under the Plan? (Y)or(N) |
|---|---|---|---|---|---|
| Pa. Dept. of Revenue (Proof of Claim No. 1) | $24,464.91 | | All property of the Debtor. | L | Y |
| Internal Revenue Service (Proof of Claim No. 2) | $275,976.77 | | All property of the Debtor. | L | Y |
| Ally Bank (Proof of Claim No. 4) | $14,618.61 | $0.00 | Lien on Certificate of Title to 2016 Ford F-150, VIN No. 1FTEW1EF8GKE73067 | D | Y |
| The KADA Gallery (Proof of Claim No. 25) | $185,595.33 | | Possessory interest in artwork | D | N |

| Creditor | Total Amount Owed | Arrearages | Type of Collateral Priority of Lien (1, 2, 3) | (D) (L) (U)* | Will Liens be Retained Under the Plan? (Y)or(N) |
|---|---|---|---|---|---|
| Charles R. and Margaret J. Burger | $0.00 | $0.00 | This lien on 9830 Wattsburg Road, Erie, Pennsylvania was previously paid in full and a Satisfaction has been filed at the Office of the Recorder of Deeds of Erie County, Pennsylvania. | D | N |
| City of Erie Tax Collector | $33,674.70 | $0.00 | Statutory Lien for Real Estate Taxes on property located at 2100 South Shore Drive, Erie, Pennsylvania 16505 | L | Y |
| Fifth Third Bank | $7,132.00 | | Lien on Certificate of Title to 2014 Ford F-150, VIN No. 1FTFW1R67EFC66190 | D | N Claim has been paid in full |
| Northwest Bank | $0.00 | | The liens on 9830 Wattsburg Road, Erie, Pennsylvania and Lot 15, Village Common Drive, Erie, Pennsylvania were previously paid in full and Satisfactions have been filed at the Office of the Recorder of Deeds of Erie County, Pennsylvania. | D | N |
| PNC Bank, N.A. | $640,129.69 | | First Mortgage Lien on real estate located at 2100 South Shore Drive, Erie, Pennsylvania | D | Y |
| PNC Bank, N.A. | $65,728.90 | | First Mortgage Lien on real estate located at 9830 Wattsburg Road, Erie, Pennsylvania | L | N Claim has been paid in full |
| Tax Collector, Township of Greene | $8,380.97 | | Statutory Lien for real estate taxes on property located at 9830 Wattsburg Road, Erie, Pennsylvania | L | N Claim has been paid in full |
| Tax Collector, Township of Millcreek | $4,329.79 | | Statutory Lien for real estate taxes on property located at Lot 15, Village Common Drive, Erie, Pennsylvania, Tax Index No. 33-123-418.0-034.01 | L | Y |

| Creditor | Total Amount Owed | Arrearages | Type of Collateral Priority of Lien (1, 2, 3) | (D) (L) (U)* | Will Liens be Retained Under the Plan? (Y)or(N) |
|---|---|---|---|---|---|
| Wells Fargo Bank, N.A. (Proof of Claim No. 23) | $572,493.98 | | 2nd Mortgage on real estate located at 9830 Wattsburg Road, Erie, Pennsylvania; 1st Mortgage on real estate located at Lot 15, (2368) Village Common Drive, Erie, Pennsylvania, Tax Index No. 33-123-418.0-034.01; security interest against non-Debtor property | D | Y Claim has been paid down from sale of 9830 Wattsburg Rd. |
| **TOTAL** | **$1,832,525.65** | | | | |

\* Disputed (D), Liquidated(L), Unliquidated (U)

B.     Priority Claims

## PRIORITY CLAIMS

| Creditor | Total Amount Owed | Type of Collateral | (D) (L) (U)* |
|---|---|---|---|
| Pa. Dept. of Revenue (Proof of Claim No. 1) | $20,956.97 | | D |
| Internal Revenue Service (Proof of Claim No. 2) | $113,241.29 | | D |
| Berkheimer | $8,083.00 | | D |
| Pa. Dept. of Revenue (Estimated 2019 Tax Liability) | $26,726.00 | | D |
| New York State Department of Taxation and Finance | $598.11 | | D |
| **TOTAL** | **$169,605.37** | | |

\* Disputed (D), Liquidated(L), Unliquidated (U)

C.      Unsecured Claims

     1.      Amount Debtor Scheduled (Disputed and Undisputed)  $   9,569,099.74
     2.      Amount of Unscheduled Unsecured Claims[2]  $       168,395.57
     3.      Total Claims Scheduled or Filed  $   9,737,495.31
     4.      Amount Debtor Disputes  $              7.00
     5.      Estimated Allowable Unsecured Claims  $   9,737,488.31

D.      Other Classes of Creditors

     1.      Amount Debtor Scheduled (Disputed and Undisputed)  $
     2.      Amount of Unscheduled Claims[1]  $
     3.      Total Claims Scheduled or Filed  $
     4.      Amount Debtor Disputes  $
     5.      Estimated Allowable Claims  $

E.      Other Classes of Interest Holders

     1.      Amount Debtor Scheduled (Disputed and Undisputed)  $
     2.      Amount of Unscheduled Claims[1]  $
     3.      Total Claims Scheduled or Filed  $
     4.      Amount Debtor Disputes  $
     5.      Estimated Allowable Claims  $

III.    **Assets**

## ASSETS

| Assets | Value | Basis for Value Priority of Lien | Name of Lien Holder (if any) (Fair Market Value/Book Value) | Amount of Debtor's Equity (Value Minus Liens) |
|---|---|---|---|---|
| 2100 South Shore Drive, Erie, Pennsylvania 16505<br><br>Debtor has claimed a $25,150.00 exemption under 11 U.S.C. §522(d)(1). | $1,065,000.00 | Purchase Price of Current Sale Agreement | City of Erie Tax Collector ($33,674.70); PNC Bank ($640,129.69); Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | $91,000.00e |
| Lot 15, (2368) Village Common | $399,000.00 | Debtor's/Realtor's | Tax Collector, | $0.00 |

---

[2] Includes a) unsecured claims filed by unscheduled creditors; b) that portion of any unsecured claim filed by a scheduled creditor that exceeds the amount debtor scheduled; and c) any unsecured portion of any secured debt not previously scheduled.

| Assets | Value | Basis for Value Priority of Lien | Name of Lien Holder (if any) (Fair Market Value/Book Value) | Amount of Debtor's Equity (Value Minus Liens) |
|---|---|---|---|---|
| Drive, Erie, Pennsylvania (Tax Index No. 33-123-418.0-034.01) | | Opinion | Township of Millcreek ($4,329.79); Wells Fargo Bank, N.A. ($569,602.42); Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | |
| 2016 Ford F-150 VIN No. 1FTEW1EF8GKE73067 | $22,425.00 | Debtor's Opinion | Ally Bank ($14,618.61); Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | $0.00 |
| 2014 Ford F-150  VIN No. 1FTFW1R67EFC66190<br><br>Debtor has claimed a $4,000.00 exemption under 11 U.S.C. §522(d)(2). | $12,575.00 | Debtor's Opinion | Fifth Third Bank ($7,132.00); Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | $0.00 |
| 1990 Mercedes 420 SEL VIN No. WDBCA35E1LA514324 | $2,000.00 | Debtor's Opinion | Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | $0.00 |
| 2011 Honda Accord EX VIN No. 1HGCS2B89BA004925 | $6,025.00 | Debtor's Opinion | Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | $0.00 |
| Usual and Ordinary Household and Office Goods and Furnishings<br><br>Debtor has claimed a $8,000.00 exemption under 11 U.S.C. §522(d)(3). | $13,000.00 | Debtor's Opinion | Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | $0.00 |
| Usual and Ordinary Electronics<br><br>Debtor has claimed a $400.00 exemption under 11 U.S.C. §522(d)(3). | $400.00 | Debtor's Opinion | Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | $0.00 |
| Artwork/Paintings/Antiques<br><br>Debtor has claimed a $4,000.00 exemption under 11 U.S.C. §522(d)(3). | $250,000.00 | Debtor's Opinion | Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | $0.00 |

#1430906

| Assets | Value | Basis for Value Priority of Lien | Name of Lien Holder (if any) (Fair Market Value/Book Value) | Amount of Debtor's Equity (Value Minus Liens) |
|---|---|---|---|---|
| Usual and Ordinary Wearing Apparel<br><br>Debtor has claimed a $1,000.00 exemption under 11 U.S.C. §522(d)(3). | $1,000.00 | Debtor's Opinion | Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | $0.00 |
| Jewelry<br><br>Debtor has claimed a $750.00 exemption under 11 U.S.C. §522(d)(4). | $750.00 | Debtor's Opinion | Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | $0.00 |
| Cash on Hand<br><br>Debtor has claimed a $300.00 exemption under 11 U.S.C. §522(d)(5). | $300.00 | Face Value on Date of Filing of Bankruptcy Petition | Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | $0.00 |
| Premium Money Market Account @ PNC Bank, N.A. | $15,752.56 | Face Value on Date of Filing of Bankruptcy Petition | Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | $0.00 |
| Interest Bearing Checking Account @ PNC Bank, N.A.<br><br>Debtor has claimed a $800.49 exemption under 11 U.S.C. §522(d)(5). | $4,384.28 | Face Value on Date of Filing of Bankruptcy Petition | Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | $0.00 |
| Income Tax Escrow Account @ PNC Bank, N.A.[3] | $35,700.00 | Face Value on Date of Filing of Bankruptcy Petition | Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | $0.00 |
| Savings Account @ Widget Financial<br><br>Debtor has claimed a $219.51 exemption under 11 U.S.C. §522(d)(5). | $219.51 | Face Value on Date of Filing of Bankruptcy Petition | Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | $0.00 |

---

[3] Pursuant to Court Order dated January 27, 2020 entered in the Tri-State Case (Doc. No. 41), this is an account established solely for the purpose of depositing 34% of the Debtor's semi-monthly gross compensation into escrow dedicated for the payment of ongoing quarterly income taxes.

#1430906

| Assets | Value | Basis for Value Priority of Lien | Name of Lien Holder (if any) (Fair Market Value/Book Value) | Amount of Debtor's Equity (Value Minus Liens) |
|---|---|---|---|---|
| 2374 Village Common Drive LLC<br><br>Debtor has claimed a $1.00 exemption under 11 U.S.C. §522(d)(5). | $1.00 | Debtor's Opinion<br><br>Assts $6.2m Liabilities $6.9m<br><br>The business debts are greater than the business assets. | Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | $0.00 |
| 83.61% Majority Ownership in Greater Erie Surgery Center LLC<br><br>Debtor has claimed a $1.00 exemption under 11 U.S.C. §522(d)(5). | $1.00 | Debtor's Opinion<br><br>Assets $500,000 Liabilities $6m<br><br>The business debts are greater than the business assets. | Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | $0.00 |
| Tri-State Pain Institute LLC<br><br>Debtor has claimed a $1.00 exemption under 11 U.S.C. §522(d)(5). | $1.00 | Debtor's Opinion<br><br>Assets $1.7m Liabilities $7.95m<br><br>The business debts are greater than the business assets. | Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | $0.00 |
| Faith Innovation Technologies, Inc. | $0.00 | Debtor's Opinion | Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | $0.00 |
| 401(k) – Mass Mutual (CoAdvantage Corporation, Retirement Savings Plan)<br><br>Debtor has claimed a $29,000.00 exemption under 11 U.S.C. §522(d)(12). | $29,000.00 | Debtor's Opinion | Internal Revenue Service ($275,976.77) | $0.00 |
| Medical Licenses<br>1) Medical Physician and Surgeon (PA)<br>2) Doctor (NY)<br><br>Debtor has claimed a $1.00 exemption under 11 U.S.C. §522(d)(5). | $1.00 | Debtor's Opinion | Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | $0.00 |
| Social Security Benefits<br><br>Debtor has claimed a $1.00 exemption under 42 U.S.C. §407. | $1.00 | Debtor's Opinion | Internal Revenue Service ($275,976.77) | $0.00 |

| Assets | Value | Basis for Value Priority of Lien | Name of Lien Holder (if any) (Fair Market Value/Book Value) | Amount of Debtor's Equity (Value Minus Liens) |
|---|---|---|---|---|
| Insurance Policy through Knights of Columbus in the face amount of $5,000.00 with a cash surrender value of $21,377.25<br><br>Debtor has claimed a $13,400.00 exemption under 11 U.S.C. §522(d)(8). | $21,377.25 | Debtor's Opinion | Internal Revenue Service ($275,976.77); Pa. Dept. of Revenue ($24,464.91) | $0.00 |
| Two Professional Liability Insurance Policies; NORCAL Mutual Insurance Company (2017 and 2018 through June 28, 2018)<br><br>Debtor has claimed a $1.00 exemption under 11 U.S.C. §522(d)(5). | $1.00 | Debtor's Opinion | N/A | 1.00 |
| **TOTAL** | **$1,879,914.60** | | | **$91,000.00e** |

1.   Are any assets which appear on Schedule A or B of the bankruptcy petition not listed above?  If so, identify asset and explain why asset is not in estate:

The real property located at 9830 Wattsburg Road, Erie, PA 16509 was sold pursuant to Court Order dated November 25, 2020 (Doc. No. 227) and Report of Sale dated December 28, 2020 (Doc. No. 242).

In addition, the following vehicles have been surrendered to the lienholder and sold, or scrapped:

| **Vehicle** | **Lienholder** |
|---|---|
| 2017 Ford Super Duty F-250 VIN No. 1FT7X2B65HEE62124 valued at $26,675.00 | Ally Bank |
| 2017 Ford F-150, VIN No. 1FTEW1EF8HKD62536 valued at $23,600.00 | Widget Financial |
| 1955 Dodge Sedan VIN No. 84803467 valued at $1,000.00 | Internal Revenue Service/Pa. Dept. of Revenue |

2.    Are any assets listed above claimed as exempt?  If so, attach a copy of Schedule C and any amendments.

Yes.  See attached Exhibit "A".  However, the Debtor may elect to forgo any available exemptions at the time of sale for the benefit of creditors.

**IV.    Summary of Plan**

1.    Effective Date of Plan:  After confirmation order becomes final and unappealable.

2.    Will cramdown be sought? ☐ Yes    ☒ No
If yes, state bar date:  _____

3.    Treatment of Secured **Non-Tax** Claims

## SECURED **NON-TAX** CLAIMS

| Name of Creditor | Class | Amount Owed | Summary of Proposed Treatment |
|---|---|---|---|
| PNC Bank, N.A.<br>First Mortgage Lien on real estate located at 2100 South Shore Drive, Erie, Pennsylvania | 1 | $647,171.24 | This lien will be paid in full upon sale of the real estate located at 2100 South Shore Drive, Erie, Pennsylvania. |
| PNC Bank, N.A.<br>First Mortgage Lien on real estate located at 9830 Wattsburg Road, Erie, Pennsylvania | 1 | $0.00 | This lien has been paid in full upon sale of the real estate located at 9830 Wattsburg Road, Erie, Pennsylvania. |
| Wells Fargo Bank, N.A. (Proof of Claim No. 23)<br>1st Mortgage on real estate located at Lot 15, (2368) Village Common Drive, Erie, Pennsylvania, Tax Index No. 33-123-418.0-034.01; security interest against non-Debtor property | 1 | $439,660.00e | This mortgage has been partially paid from proceeds of the sale of 9830 Wattsburg Road, Erie, Pennsylvania and will also be paid from the proceeds of the sale/surrender of the real estate located at Lot 15 (2368) Village Common Drive, Erie, Pennsylvania, Tax Index No. 33-123-418-0.034.01.  If any balance remains due after the sale/surrender of both of these parcels of real estate, it shall be treated as an unsecured claim, subject to further payment from the liquidation of non-Debtor assets. |
| The KADA Gallery<br>Possessory lien on artwork | 3 | $185,595.33 | After the extent of its lien is determined, this lien will be paid from the surrender of collateral in claimant's possession.  This lien may be avoided, as necessary, as to certain of the Debtors' other personal property.  Any deficiency balance due shall be treated as a Class 5a general unsecured claim. |
| Ally Bank (Proof of Claim No. 4) | 3 | $14,618.61 | To be paid in full according to contract |

| Name of Creditor | Class | Amount Owed | Summary of Proposed Treatment |
|---|---|---|---|
| Lien on Certificate of Title to 2016 Ford F-150, VIN No. 1FTEW1EF8GKE73067 | | | terms. |
| Fifth Third Bank<br>Lien on Certificate of Title to 2014 Ford F-150, VIN No. 1FTFW1R67EFC66190 | 3 | $0.00 | This claim has been paid in full. |
| Charles R. and Margaret J. Burger | N/A | $0.00 | No balance is due, and no distribution will be made under the Plan. |
| Northwest Bank | N/A | $0.00 | No balance is due, and no distribution will be made under the Plan. |
| **TOTAL** | | **$1,287,045.18** | |

4.    Treatment of Secured Claims

## SECURED TAX CLAIMS

| Name of Creditor | Class | Amount Owed | Summary of Proposed Treatment |
|---|---|---|---|
| City of Erie Tax Collector<br>Statutory Lien for Real Estate Taxes on the real estate located at 2100 South Shore Drive, Erie, Pennsylvania 16505 | 1 | $33,674.70 | This debt will be paid in full upon the sale of the real estate at 2100 South Shore Drive, Erie, Pennsylvania 16505. |
| Tax Collector, Township of Greene<br>Statutory Lien for real estate taxes on real estate located at 9830 Wattsburg Road, Erie, Pennsylvania | 1 | $0.00 | This debt will be paid in full upon the sale of the real estate at 9830 Wattsburg Road, Erie, Pennsylvania. |
| Tax Collector, Township of Millcreek<br>Statutory Lien for real estate taxes on Lot 15, (2368) Village Common Drive, Erie, Pennsylvania, Tax Index No. 33-123-418.0-034.01 | 1 | $4,329.79 | This debt will be paid in full upon the sale/surrender of Lot 15, (2368) Village Common Drive, Erie, Pennsylvania, Tax Index No. 33-123-418.0-034.01. |
| Pa. Dept. of Revenue (Proof of Claim No. 1) | 2 | $24,464.91 | This debt will be paid first from the sale of the real estate at 2100 South Shore Drive, Erie, Pennsylvania 16505.  Any remaining balance will then be paid from the sale of personal property.  To the extent any balance still remains due, it will be paid in full over sixty (60) months at 5% interest. |
| Internal Revenue Service (Proof of Claim No. 2) | 2 | $275,976.77 | This debt will be paid first from the sale of the real estate at 2100 South Shore Drive, Erie, Pennsylvania 16505.  Any remaining balance will then be paid from the sale of personal property.  To the extent any balance still remains due, it will be paid in full over sixty (60) months at 3% interest. |
| **TOTAL** | | **$338,446.17** | |

**5.**    Treatment of Administrative **Non-Tax** Claims[4]

## ADMINISTRATIVE **NON-TAX** CLAIMS

| Name of Creditor* | Amount Owed | Type of Debt** | Summary of Proposed Treatment and Date of First Payment | Proposed Amount to be Paid |
|---|---|---|---|---|
| The Quinn Law Firm | $250,000.00e | P | To be resolved pursuant to forthcoming stipulation in accordance with this Court's Order of March 16, 2021 (See Doc. No. 309).  Resolved amount to be paid from Debtor's escrow for administrative claims and/or from the sale of real estate and/or personal property.  To the extent any balance remains due after liquidation of assets, to be paid in full via regular monthly installments over no longer than sixty (60) months. | $162,500.00e |
| MacDonald Illig Jones & Britton | $174,000.00e | P | To be resolved pursuant to forthcoming stipulation in accordance with this Court's Order of March 16, 2021 (See Doc. No. 309).  Resolved amount to be paid from Debtor's escrow for administrative claims and/or from the sale of real estate and/or personal property.  To the extent any balance remains due after liquidation of assets, to be paid in full via regular monthly installments over no longer than sixty (60) months. | $113,100.00e |
| Schaffner, Knight, & Minnaugh | $15,000.00e | P | To be paid from Debtor's escrow for administrative claims and/or from the sale of real estate and/or personal property.  To the extent any balance remains due after liquidation of assets, to be paid in full via regular monthly installments over no longer than sixty (60) months. | $15,000.00e |
| Graff & McGovern, LPA | $2,500.00e | P | To be paid from Debtor's escrow for administrative claims and/or from the sale of real estate and/or personal property.  To the extent any balance remains due after liquidation of assets, to be paid in full via regular monthly installments over no longer than sixty (60) months. | $2,500.00e |
| Kenney, Shelton, Liptak, & Nowak LLP | $2,500.00e | P | To be paid from Debtor's escrow for administrative claims and/or from the sale of real estate and/or personal property.  To the extent any balance remains due after liquidation of assets, to be paid in full via regular monthly installments over no longer than sixty (60) months. | $2,500.00e |
| **TOTAL** | **$444,000.00e** | | | $295,600.00e |

\*    Identify and Use Separate Line for Each Professional and Estimated Amount of Payment

\*\*    Type of Debt (P = Professional, TD = Trade, TX = Taxes)

---

[4] Include all §503(b) administrative claims.

6.    Treatment of Administrative Tax Claims

## ADMINISTRATIVE **TAX** CLAIMS

| Name of Creditor* | Amount Owed | Type of Debt** | Summary of Proposed Treatment and Date of First Payment |
|---|---|---|---|
| Internal Revenue Service<br>Anticipated capital gains tax coming due from sale of 9830 Wattsburg Rd. and/or additional income tax liability from the future filing of Debtor's 2020 tax return | $59,980.00e | TX | After the extent of this claim is determined from the filing of Debtor's future tax returns, which may also include the carryback of a substantial loss, to be paid from Debtor's escrow for administrative claims and/or in order of priority from the sale of real estate and/or personal property. |
| **TOTAL** | **$59,980.00e** | | |

* Identify and Use Separate Line for Each Professional and Estimated Amount of Payment

** Type of Debt (P = Professional, TD = Trade, TX = Taxes)

7.    Treatment of Priority Non-Tax Claims

## PRIORITY NON-TAX CLAIMS

| Name of Creditor | Class | Amount Owed | Date of Assessment | Summary of Proposed Treatment |
|---|---|---|---|---|
| None. | | | | |
| | | | | |

8.    Treatment of Priority Tax Claims[5]

## PRIORITY TAX CLAIMS

| Name of Creditor | Class | Amount Owed | Date of Assessment | Summary of Proposed Treatment |
|---|---|---|---|---|
| Pa. Dept. of Revenue (Proof of Claim No. 1) | 4 | $20,956.97 | Various | To be paid in order of priority from the sale of personal property.  To the extent any balance remains due after liquidation of assets, to be paid in full, with interest, via regular monthly installments over no longer than sixty (60) months. |
| Internal Revenue Service (Proof of Claim No. 2); Estimated 2019 Tax Liability was included in | 4 | $113,241.29 | Various | To be paid in order of priority from the sale of personal property.  To the extent any balance remains due after liquidation of assets, to be paid in full, |

[5] Include dates why any §507(a)(7) taxes were assessed.

| Name of Creditor | Class | Amount Owed | Date of Assessment | Summary of Proposed Treatment |
|---|---|---|---|---|
| Proof of Claim | | | | with interest, via regular monthly installments over no longer than sixty (60) months. |
| Berkheimer | 4 | $8,083.00 | 2019 Local Income Tax | To be paid in order of priority from the sale of personal property.  To the extent any balance remains due after liquidation of assets, to be paid in full, with interest, via regular monthly installments over no longer than sixty (60) months. |
| Pa. Dept. of Revenue | 4 | $26,726.00 | 2019 State Income Tax | To be paid in order of priority from the sale of personal property.  To the extent any balance remains due after liquidation of assets, to be paid in full, with interest, via regular monthly installments over no longer than sixty (60) months. |
| New York State Department of Taxation and Finance | 4 | $598.11 | 2019 State Income Tax | To be paid in order of priority from the sale of personal property.  To the extent any balance remains due after liquidation of assets, to be paid in full within thirty (30) days of the Effective Date as de minimis. |
| **TOTAL** | | **$169,605.37** | | |

9.     Treatment of General Unsecured Non-Tax Claims less than $20,000.00

## GENERAL UNSECURED NON-TAX CLAIMS LESS THAN $20,000.00

| Name of Creditor | Class | Total Amount Owed | Amount of Dividend |
|---|---|---|---|
| Widget Financial (Proof of Claim No. 21) | 5a | $11,335.23 | $1,000.00 |
| Bank of America, N.A. | 5a | $18,092.48 | $1,000.00 |
| Best Wildlife Services | 5a | $8,696.40 | $1,000.00 |
| Dahlkemper Landscape Architects & Contractors | 5a | $3,088.00 | $1,000.00 |
| Ally Bank (Proof of Claim No. 3) | 5a | $0.00 | Claim will be withdrawn |
| Greater Erie Surgery Center LLC | 5a | $1.00 | Claim will be waived |
| Mrs. and Mrs. Steven E. Ribbing (Proof of Claim No. 19) | 5a | $1.00 | Professional liability claim, to be covered by insurance |
| Ms. Barbara Noonan | 5a | $1.00 | Professional liability claim, to be covered by insurance |

| Name of Creditor | Class | Total Amount Owed | Amount of Dividend |
|---|---|---|---|
| Northwest Bank | 5a | $1.00 | Unsatisfied mortgage on property no longer owned by Debtor |
| George W. Connor MD | 5a | $1.00 | Professional liability crossclaim, to be covered by insurance |
| UPMC Chautauqua at WCA | 5a | $1.00 | Professional liability crossclaim, to be covered by insurance |
| Vanessa G. Ramial MD | 5a | $1.00 | Professional liability crossclaim, to be covered by insurance |
| Zubin Menon MD | 5a | $1.00 | Professional liability crossclaim, to be covered by insurance |
| Glen Morisue | N/A | $0.00 | Potential executory contract rejection damages claim not filed |
| Rick Rumball | N/A | $0.00 | Potential executory contract rejection damages claim has been resolved |
| Frederick J. Marchinetti, II (Proof of Claim No. 5) | N/A | $0.00 | This is a professional liability claim that has been settled and denied with prejudice per Court Order dated July 7, 2020 at Adv. Proc. No. 20-1006-TPA (Doc. No. 70). |
| Kelly S. Buck and Scott A. Buck (Proof of Claim No. 6) | N/A | $0.00 | This is a professional liability claim that has been settled and denied with prejudice per Court Order dated July 7, 2020 at Adv. Proc. No. 20-1006-TPA (Doc. No. 70). |
| Marjorie A. Weidner (Proof of Claim No. 7) | N/A | $0.00 | This is a professional liability claim that has been settled and denied with prejudice per Court Order dated July 7, 2020 at Adv. Proc. No. 20-1006-TPA (Doc. No. 70). |

#1430906

| Name of Creditor | Class | Total Amount Owed | Amount of Dividend |
|---|---|---|---|
| Harold Hewitt (Proof of Claim No. 9) | N/A | $0.00 | This is a professional liability claim that has been settled and denied with prejudice per Court Order dated July 7, 2020 at Adv. Proc. No. 20-1006-TPA (Doc. No. 70). |
| Rita Jennings and George Jennings (Proof of Claim No. 10) | N/A | $0.00 | This is a professional liability claim that has been settled and denied with prejudice per Court Order dated July 7, 2020 at Adv. Proc. No. 20-1006-TPA (Doc. No. 70). |
| Brian S. Clark and Beth Clark  (Proof of Claim No. 11) | N/A | $0.00 | This is a professional liability claim that has been settled and denied with prejudice per Court Order dated July 7, 2020 at Adv. Proc. No. 20-1006-TPA (Doc. No. 70). |
| Sharon L. Kulig and Steven B. Kulig (Proofs of Claim No. 12 and 16) | N/A | $0.00 | This is a professional liability claim that has been settled and denied with prejudice per Court Order dated July 7, 2020 at Adv. Proc. No. 20-1006-TPA (Doc. No. 70). |
| Lester Spencer and Chris Spencer (Proof of Claim No. 13) | N/A | $0.00 | This is a professional liability claim that has been settled and denied with prejudice per Court Order dated July 7, 2020 at Adv. Proc. No. 20-1006-TPA (Doc. No. 70). |
| Steven Kinross and Kathy Kinross (Proof of Claim No. 14) | N/A | $0.00 | This is a professional liability claim that has been settled and denied with prejudice per Court Order dated July 7, 2020 at Adv. Proc. No. 20-1006-TPA (Doc. No. 70). |

| Name of Creditor | Class | Total Amount Owed | Amount of Dividend |
|---|---|---|---|
| Ernest Guichard (Proof of Claim No. 15) | N/A | $0.00 | This is a professional liability claim that has been settled and denied with prejudice per Court Order dated July 7, 2020 at Adv. Proc. No. 20-1006-TPA (Doc. No. 70). |
| Darin Williamson | N/A | $0.00 | This is a professional liability claim that has been settled and denied with prejudice per Court Order dated July 7, 2020 at Adv. Proc. No. 20-1006-TPA (Doc. No. 70). |
| **TOTAL** | | **$41,212.11** | **$4,000.00** |

10.    Treatment of General Unsecured Tax Claims less than $20,000.00

## GENERAL UNSECURED TAX CLAIMS LESS THAN $20,000.00

| Name of Creditor | Class | Total Amount Owed | Amount of Dividend |
|---|---|---|---|
| Pa. Dept. of Revenue (Proof of Claim No. 1) | 5a | $1,556.47 | $1,000.00 |
| Internal Revenue Service (Proof of Claim No. 2) | 5a | $5,200.39 | $1,000.00 |
| **TOTAL** | | **$6,756.86** | **$2,000.00** |

11.    Treatment of Unsecured Non-Tax Claims greater than $20,000.00

## UNSECURED CLAIMS GREATER THAN $20,000.00

| Name of Creditor | Class | Total Amount Owed | Percent of Dividend |
|---|---|---|---|
| MacDonald, Illig, Jones, & Britton LLP (Proof of Claim No. 18) | 5a | $127,719.73 | <1% |
| McKesson Medical-Surgical, Inc. (Proof of Claim No. 24) | 5a | $52,415.51 | <1% |
| Barclay Card | 5a | $42,592.41 | <1% |

| Name of Creditor | Class | Total Amount Owed | Percent of Dividend |
|---|---|---|---|
| Candor Surgical Management, Inc. (Proof of Claim No. 27)<br>Payments made by GESC | 5b | $1,109,464.24 | <1% |
| TIAA Commercial Finance, Inc. (Proof of Claim No. 8)<br>To be partially reduced from sale/surrender of Tri-State equipment | 5b | $805,733.78e | <1% |
| United States of America, Small Business Administration (Proof of Claim No. 17)<br>Secured by 2374 real estate | 5b | $2,433,584.00 | <1% |
| Wells Fargo Bank, N.A. (Proof of Claim No. 23)<br>To be substantially reduced from sale/surrender of 2374 real estate/assets and non-Debtor assets | 5b | $1,400,000.00e | <1% |
| Wells Fargo Bank, N.A. (Proof of Claim No. 23)<br>To be substantially reduced from sale/surrender of Lot 15 (2368) Village Common Drive and non-Debtor assets | 5b | $340,000.00e | <1% |
| **TOTAL** | | **$6,195,969.67** | |

12.    Will Periodic Payments be made to unsecured creditors?

☐ Yes    ☒ No

If so:

Amount of each payment (aggregate to all unsecured claimants):    $          N/A
Estimated date of first payment:
Time period between payments:
Estimated date of last payment:
Contingencies, if any:

**State source of funds for planned payments, including funds necessary for capital replacement, repairs, or improvements**:

The Debtor currently has no projected disposable income as evidenced by Schedules I and J to his Completed Petition (Doc. No. 31).  The Debtor's Schedules currently budget for reasonably projected payments on account of

Class 2 Secured Tax Claims and Administrative Non-Tax Claims, which expenses the Debtor had been paying pre-petition.  The Debtor also plans to sell personal assets to pay claimants in order of priority, which, in turn, should eliminate *some* of his current expenses and *some* of those projected payments.  From that reduction, the Debtor will rededicate then available funds to pay unsecured priority creditors and professional fees.  Existing income is already being dedicated to regular ongoing household and personal expenses, with some consideration given for a potential increase in certain of those expenses.  Attached as Exhibit "B" is an analysis of the Debtor's projected disposable income to support his Plan Feasibility set forth in Section VI below.  Additionally, the Debtor will likely face a further reduction in his income as a result of the impending relocation of his practice.  For the purposes of Plan confirmation, and in an effort to improve Tri-State's cash flow budget, the Debtor's gross compensation will be initially reduced from $30,000.00/mo. to $25,000.00/mo.

Estimated amount of monthly Plan payments for next sixty (60) months after the Effective Date of the Plan:

| | |
|---|---|
| Quinn Law Firm | $2,000.00 |
| MIJB | $1,000.00 |
| Ally Bank | $932.80 |
| Millcreek Twp. | $200.00 |
| PADOR | $750.00 |
| IRS | $4,000.00 |
| **Total** | **$8,937.14** |

**Other significant features of the plan:**

Current Payment of Class 2 Secured Tax Claims and Administrative Non-Tax Claims:  The Debtor continues to pay down Class 2 Secured Tax Claims and Administrative Non-Tax Claims from existing income as allowed by the Court.  If Class 2 Secured Tax Claims and Administrative Non-Tax Claims are reduced prior to the sale of personal assets, junior creditors may have a better chance of receiving higher distributions from the sale of personal assets, as illustrated in Section I-7 above.

Priority Tax Claims After Filing of Returns:  The Debtor has filed his 2019 tax returns, which were on extension through October 15, 2020.  Such filings affect the amounts owed for Priority Tax Claims, which were largely estimated liabilities because those returns had not yet been filed.  Priority Tax Claims are projected to be paid in order of priority from personal asset sales.  Because Priority Tax Claims have been reduced after the Debtor filed his 2019 tax returns, unsecured creditors may have a better chance of receiving a distribution from the sale of personal assets.

**Include any other information necessary to explain this plan:**

<u>Explanation of Best Efforts</u>:  To reiterate, the Debtor currently has no projected disposable income pursuant to 11 U.S.C. § 1129(a)(15)(B), and his future income has become uncertain given the planned relocation of Tri-State.  As set forth in Section V below, a liquidation alternative analysis results in $0.00 (0%) available for distribution to unsecured creditors.  Per Section III above, the Debtor currently estimates his net, non-exempt equity to be approximately $107,500.00 based upon the current purchase price obtained for the sale of 2100 South Shore Drive.  Regardless, the Debtor intends to contribute more than the approximate value of that net, non-exempt equity to his Plan through personal asset sales.  It is estimated that that amount could be a net aggregate purchase price of approximately $300,000.00 or more.  Also, given the complexity of this Bankruptcy Case, its affiliation with the Tri-State Case and 2374 Case, and the efforts to be undertaken to consummate this Plan, the Debtor anticipates significant administrative expenses.  As a result of all these variables, the Debtor submits that these are his best efforts to repay creditors under the current and projected circumstances.

<u>Planned Contributions to Retirement Plan</u>:  Additionally, the Debtor is seventy-one (71) years old.  Some portion of the Debtor's net disposable income realized from a reduction in current expenses and projected payments should be dedicated to contributions to a 401(k)-type plan in order to save for retirement, which contributions the Debtor has not been making and is presently unable to make.  This is consistent with, e.g., *In re Egan*, 458 B.R. 836 (E.D. Pa. 2011).  The Debtor proposes to contribute approximately $2,200/mo. (which equals the approximate amount of his exempt social security benefits) to a retirement plan after realizing a reduction in current expenses and projected payments, subject to the potential for further reduction if his anticipated compensation is not sufficient to cover expenses.

## V.    **Comparison of Plan with Chapter 7 Liquidation**

If Debtor's proposed plan is not confirmed, the potential alternatives would include proposal of a different plan, dismissal of the case or conversion of the case to Chapter 7.  If this case is converted to Chapter 7, a trustee will be appointed to liquidate the debtor's non-exempt assets.  In this event, all secured claims and priority claims, including all expenses of administrative, must be paid in full before any distribution is made to unsecured claimants.

| | |
|---|---|
| Total value of Chapter 7 estate (See Section III) | $  1,879,914.60e |
| 1.    Less secured claims (See II A) | $  1,625,491.35 |

#1430906

|   |   |   |   |
|---|---|---|---|
| 2. | Less administrative expenses (See IV-5-6 and include approximate Chapter 7 expenses | $ | 413,255.18e[6] |
| 3. | Less other priority claims (See II B) | $ | 169,605.37 |
|   | Total Amount Available for Distribution to Unsecured Creditors | $ | (328,437.30) |
|   | Divided by total allowable unsecured claims of (See Section II C) | $ | $9,737,488.31 |
|   | Percentage of Dividend to Unsecured Creditors |   | 0% |

Will the creditors fare better under the Plan than they would in a Chapter 7 liquidation?

☒ Yes    ☐ No

Explain: Estimated dividend under this Plan to unsecured creditors with claims equal to or less than $20,000.00 (the Class 5a convenience class) is five percent (5%) or more. Unsecured creditors with claims greater than $20,000.00 (Class 5b) are estimated to still receive more than zero percent (0%).  Percentage distribution to Class 5b creditors could increase upon successful sales of assets and/or the claims objection process.

## VI.    **Feasibility**

A.    Attach Income Statement for Prior 12 Months.

B.    Attach Cash Flow Statement for Prior 12 Months.

C.    Attach Cash Flow Projections for Next 12 Months.

Estimated amount to be paid on Effective Date of Plan, including administrative expenses.

$    8,850.00

Show how this amount was calculated.

| $ | 3,000.00 | Administrative Class |
|---|---|---|
| $ | 4, 950.00 | Taxes |
| $ | 650.00 | UST Fees |
| $ | 8,600.00 | TOTAL |

---

[6] Includes $57,675.18 for approximate Chapter 7 expenses per 11 U.S.C. § 326.

What assumptions are made to justify the increase in cash available for the funding of the Plan?

See Section IV-12 above.

Will funds be available in the full amount for administrative expenses on the Effective Date of the Plan?  From what source?  If not available, why not and when will payments be made?

Funds will likely not be available in the full amount for administrative expenses on the Effective Date of the Plan because funds from the projected sale of personal assets will likely be insufficient to cover them.  If not available, regular installment payments will be made from the Debtor's current and future income.

Cash on hand    $    52,263.65   (Current) Attach current bank statement

Cash on hand    $    36,000.00   (Estimated amount available on date of confirmation)

If this amount is less than the amount necessary at confirmation, how will Debtor make up the shortfall?

N/A.  Please note that the current cash on hand amount is significantly higher as a result of funds accruing in the Debtor's post-petition Income Tax Escrow Account and the deposit of exempt Social Security Benefits into the Debtor's Premium Money Market Account (See Section III above).

## VII.   **Management Salaries**

### MANAGEMENT SALARIES

| Position/Name of Person Holding Position | Salary at Time of Filing | Proposed Salary (Post-Confirmation) |
|---|---|---|
| Joseph Martin Thomas | $360,000.00/yr. | $300,000/00/yr. |
| | | |

## VIII.   **Identify the Effect on Plan Payments and Specify Each of the Following:**

1.   What, if any, Litigation is Pending?

The civil action of TIAA Commercial Finance, Inc., at Case No. 19-CV-335 in the United States District Court for the Western District of

#1430906

Pennsylvania has been reopened pursuant to the grant of relief from stay by this Court, and the District Court continues to monitor the results of this Case and the Tri-State and 2374 Cases.  Debtor anticipates that TIAA's collateral will be sold or surrendered in connection with the sale/surrender of real estate.

It is also worth noting that the Debtor and relevant Parties elected not to pursue any potential additional claims against Rick Rumball pursuant to this Court's Order of September 24, 2020.  Mr. Rumball agreed to return two (2) of three (3) paintings that were transferred out of the Estate pre-petition, informally resulting in a waiver of any/all claims between Mr. Rumball and the Debtor based on a cost/benefit analysis to the Estate.

2.      What, if any, Litigation is Proposed or Contemplated?

Any and all claims and causes of action the Debtor may have including, but not limited to, objections to claims, claims to determine secured status, claims to recover preferential and/or fraudulent transfers, and causes of action under Chapter 5 of the Bankruptcy Code.  More specifically, the Debtor may object to the claims of, including but not limited to, Wells Fargo, Ally Bank (Proof of Claim No. 3), and KADA Gallery.

## IX.    Additional Information and Comments

The Debtor's member interests in his corporate entities are believed to be valueless since their liabilities exceed their assets.  Additionally, the Debtor's 2019 Tax Returns reflect losses by both 2374 and GESC.  GESC continued to experience losses, as reflected by the Periodic Report Regarding Value, Operations, and Profitability of Entities in Which the Debtor's Estate Holds a Substantial or Controlling Interest (See Doc. No. 231).  2374 is selling its only significant asset, such that it will likely cease to exist upon the consummation of any sale and/or surrender / execution of assets.  The 2374 Case was filed in order to effectuate that sale, which is currently under the jurisdiction of this Court.  The Debtor's operating entities, Tri-State and GESC, continued struggling to earn sufficient revenue to pay all expenses.  With the impending relocation of Tri-State and the Debtor's practice, operations are likely to downsize significantly.  In the process, GESC will likely cease to exist by way of the contribution of all of its assets to the Tri-State Case, or upon sale/execution/surrender of substantially all of its assets.  If this were a Chapter 7 case, a trustee would likely make a determination that the Debtor's member interests in 2374 and GESC are valueless and abandon those interests back to the Debtor, or liquidate the assets owned by 2374 and GESC in exchange for a carve-out for the Bankruptcy Estate(s).  The Debtor has proposed the within Plan, including components of a global plan with an affiliated Debtor or affiliated Debtors, to pay creditors from the liquidation of those same

#1430906

assets. In exchange the Debtor submits that he retain his interests in his corporate entities as needed to implement those plans.  As stated, the Debtor intends to relocate Tri-State and his practice and has obtained this Court's approval for its new business lease with Medical Associates of Erie (See Doc. No. 338).  Tri-State and 2374 will continue to be administered before this Bankruptcy Court accordingly.  If any such efforts stand to produce favorable results for creditors in any of the affiliated Bankruptcy Cases, appropriate approvals will be sought before this Court.

## X.    <u>Certification</u>

The undersigned hereby certifies that the information herein is true and correct to the best of my knowledge and belief formed after reasonable inquiry.

If Debtor is a corporation, attach a copy of corporate resolution authorizing the filing of this Disclosure Statement and Plan.

If Debtor is a general partnership, attach a copy of the consent agreement of all general partners to the filing of the bankruptcy.

Respectfully submitted,

THE QUINN LAW FIRM

BY:   /s/Michael P. Kruszewski
Michael P. Kruszewski, Esquire
PA Id. No. 91239
2222 West Grandview Boulevard
Erie, Pennsylvania 16506-4508
Telephone: 814-833-2222
Facsimile: 814-833-6753
E-mail: mkruszewski@quinnfirm.com
Counsel for Debtor, Joseph Martin Thomas

*/s/Joseph Martin Thomas*
Debtor, Joseph Martin Thomas

#1430906

# HISTORIC SUMMARY

| POST PETITION PERIODS | MONTH ONE | MONTH TWO | MONTH THREE | MONTH FOUR | MONTH FIVE | MONTH SIX | MONTH SEVEN | MONTH EIGHT | MONTH NINE | MONTH TEN | MONTH ELEVEN | MONTH TWELVE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. TOTAL CASH FLOW FROM OPERATIONS: | $32,171.60 | $32,171.60 | $32,971.60 | $32,971.60 | $32,171.83 | $32,171.85 | $32,171.92 | $32,171.88 | $32,171.90 | $32,171.91 | $32,171.95 | $32,171.96 |
| 2. LESS TOTAL DISBURSEMENTS EXCLUDING PAYMENTS TO CREDITORS IN A PLAN: | $19,734.51 | $19,734.51 | $19,734.51 | $19,734.51 | $17,493.93 | $21,967.35 | $16,880.41 | $20,824.78 | $19,266.23 | $16,690.16 | $23,201.37 | $21,551.83 |
| 3. TOTAL NET CASH FLOW: | $12,437.09 | $12,437.09 | $12,437.09 | $12,437.09 | $14,677.90 | $10,204.50 | $15,291.51 | $11,347.10 | 12,905.67 | $15,481.75 | $8,970.58 | $10,620.13 |

| DEFINITIONS | |
|---|---|
| TOTAL CASH FLOW FROM OPERATIONS: | THE TOTAL AMOUNT OF FUNDS COLLECTED IN A SPECIFIC PERIOD FROM CASH SALES, COLLECTION OF ACCOUNTS RECEIVABLE, AND OTHER INCOME, EXCLUDING LOANS PROCEEDS, CASH CONTRIBUTIONS FROM INSIDERS, AND SALES TAXES COLLECTED. |
| TOTAL DISBURSEMENTS EXCLUDING PAYMENTS TO CREDITORS IN A PLAN | THE TOTAL DISBURSEMENTS IN A SPECIFIC PERIOD FOR PRODUCTION COSTS, GENERAL AND ADMINISTRATIVE COSTS, EXCLUDING PAYMENTS TO CREDITORS TO BE PAID UNDER THE TERMS OF THE PROPOSED PLAN. |

** For the purposes of calculating the historic cash flow summary, post-petition income tax escrow withholdings are treated as a monthly expense in the amount of $10,200.00.

** For the purposes of Month Twelve, one-time sale proceeds were excluded from this analysis.

#1430906

# PROJECTED SUMMARY

| POST PETITION PERIODS | MONTH ONE | MONTH TWO | MONTH THREE | MONTH FOUR | MONTH FIVE | MONTH SIX | MONTH SEVEN | MONTH EIGHT | MONTH NINE | MONTH TEN | MONTH ELEVEN | MONTH TWELVE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4. TOTAL PROJECTED CASH FLOW FROM OPERATIONS: | $27,192.90 | $27,192.90 | $27,192.90 | $27,192.90 | $27,192.90 | $27,192.90 | $27,192.90 | $27,192.90 | $27,192.90 | $27,192.90 | $27,192.90 | $27,192.90 |
| 5. LESS TOTAL PROJECTED DISBURSEMENTS EXCLUDING PMTS TO CREDITORS IN A PLAN: | $17,949.40 | $17,949.40 | $17,949.40 | $17,949.40 | $17,949.40 | $17,949.40 | $16,910.56 | $16,910.56 | $16,910.56 | $16,910.56 | $16,910.56 | $16,910.56 |
| 6. ANTICIPATED CASH FLOW AVAILABLE FOR PLAN: | $9,243.50 | $9,243.50 | $9,243.50 | $9,243.50 | $9,243.50 | $9,243.50 | $10,282.34 | $10,282.34 | $10,282.34 | $10,282.34 | $10,282.34 | $10,282.34 |

| DEFINITIONS | |
|---|---|
| TOTAL PROJECTED CASH FLOW FROM OPERATIONS: | TOTAL AMOUNT OF PROJECTED FUNDS COLLECTED IN A SPECIFIC PERIOD FROM CASH SALES, COLLECTION OF ACCOUNTS RECEIVABLE, AND OTHER INCOME, EXCLUDING LOANS PROCEEDS, CASH CONTRIBUTIONS FROM INSIDERS, AND SALES TAXES COLLECTED. |
| TOTAL DISBURSEMENTS EXCLUDING PAYMENTS TO CREDITORS IN A PLAN | TOTAL PROJECTED DISBURSEMENTS IN A SPECIFIC PERIOD FOR PRODUCTION COSTS, GENERAL AND ADMINISTRATIVE COSTS, EXCLUDING PAYMENTS TO CREDITORS TO BE PAID UNDER THE TERMS OF THE PROPOSED PLAN. |

** For the purposes of calculating the projected cash flow summary, post-petition income tax escrow withholdings are treated as a monthly expense in the amount of approximately $8,500.00-$10,000.00.  That range is dependent upon additional income generated by the Debtor's business entities, in which he holds member interests.

#1430906

# PLAN FEASIBILITY

| POST PETITION PERIODS | MONTH ONE | MONTH TWO | MONTH THREE | MONTH FOUR | MONTH FIVE | MONTH SIX | MONTH SEVEN | MONTH EIGHT | MONTH NINE | MONTH TEN | MONTH ELEVEN | MONTH TWELVE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ANTICIPATED RECEIPTS AVAILABLE FOR PLAN: (SEE LINE 6, ABOVE) | $9,243.50 | $9,243.50 | $9,243.50 | $9,243.50 | $9,243.50 | $9,243.50 | $10,282.34 | $10,282.34 | $10,282.34 | $10,282.34 | $10,282.34 | $10,282.34 |
| LESS PROJECTED PLAN PAYMENTS: (SEE SECTION IV) | $8,937.14 | $8,937.14 | $8,937.14 | $8,937.14 | $8,937.14 | $8,937.14 | $8,937.14 | $8,937.14 | $8,937.14 | $8,937.14 | $8,937.14 | $8,937.14 |
| OVERAGE/(SHORTAGE) OF CASH FLOW AVAILABLE TO FUND PLAN: | $306.36 | $306.36 | $306.36 | $306.36 | $306.36 | $306.36 | $1,345.20 | $1,345.20 | $1,345.20 | $1,345.20 | $1,345.20 | $1,345.20 |

#1430906

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | *Joseph Martin Thomas* |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number | *20-10334 TPA* |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt                    4/19

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

**Part 1:**    **Identify the Property You Claim as Exempt**

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☐ You are claiming state and federal nonbankruptcy exemptions.   11 U.S.C. § 522(b)(3)

   ■ You are claiming federal exemptions.   11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| *2100 South Shore Drive Erie, PA 16505  Erie County*<br>*Subject to a Mortgage in favor of PNC Bank; Real Estate Taxes also act as a lien; Also encumbered by Internal Revenue Service Tax Liens ($460,560.32) and Pa. Dept. of Revenue Tax Liens ($29,118.35).*<br>Line from *Schedule A/B*: **1.1** | $1,250,000.00 | ■ $25,150.00<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(1)* |
| *2014 Ford F-150*<br>*Debtor intends to retain this vehicle.*<br>*VIN 1FTFW1R67EFC66190*<br>Line from *Schedule A/B*: **3.3** | $12,575.00 | ■ $4,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(2)* |
| *Usual and Ordinary Household Goods and Furnishings (Mirrors, Stove, Microwave, Beds, Dressers, Night Stands, Wine Racks, Wine, Couches, Coffes Tables, Knick Knacks, Dining Room Table and Chairs, China Hutches/Breakfronts, End Tables, Piano, Rugs, Chairs,*<br>Line from *Schedule A/B*: **6.1** | $8,000.00 | ■ $8,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(3)* |

| Debtor 1 | **Joseph Martin Thomas** | | Case number (if known) | **20-10334 TPA** |

| Brief description of the property and line on *Schedule A/B that lists this property* | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | | Specific laws that allow exemption |
|---|---|---|---|---|
| *Usual and Ordinary Electronics (2 TVs, Radio, Stereo, Computers, Security Equipment, etc.)*<br>Line from *Schedule A/B:* **7.1** | *$400.00* | ■ | *$400.00*<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(3)* |
| *Artwork/Paintings/Antiques*<br>*The market for the sale of these assets is questionable in the current economic climate, and the proper valuation of said assets is uncertain.*<br>Line from *Schedule A/B:* **8.1** | *$250,000.00* | ■ | *$4,000.00*<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(3)* |
| *Usual and Ordinary Wearing Apparel*<br>Line from *Schedule A/B:* **11.1** | *$1,000.00* | ■ | *$1,000.00*<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(3)* |
| *Jewelry*<br>Line from *Schedule A/B:* **12.1** | *$750.00* | ■ | *$750.00*<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(4)* |
| *Cash*<br>Line from *Schedule A/B:* **16.1** | *$300.00* | ■ | *$300.00*<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(5)* |
| *Checking Account: Interest Bearing Checking Account @ PNC Bank, N.A.*<br>Line from *Schedule A/B:* **17.2** | *$4,384.28* | ■ | *$800.49*<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(5)* |
| *Savings: Savings Account @ Widget Financial*<br>Line from *Schedule A/B:* **17.4** | *$219.51* | ■ | *$219.51*<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(5)* |
| *2374 Village Common Drive LLC - The business debts are greater than or equal to the business assets. Assest are approximately $7m; Debts are approximately $7m.*<br>*100%*<br>Line from *Schedule A/B:* **19.1** | *$1.00* | ■ | *$1.00*<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(5)* |
| *Greater Erie Surgery Center LLC (Debtor owns majority interest; Dr. Difenbach owns the minority interest.)*<br>*The business debts are greater than the business assets. Assets are approximately $1.3m; Debts are approximatley $6m.*<br>*Majority - 83.61%*<br>Line from *Schedule A/B:* **19.2** | *$1.00* | ■ | *$1.00*<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(5)* |

| Debtor 1 | **Joseph Martin Thomas** | | Case number (if known) | **20-10334 TPA** |
|---|---|---|---|---|

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| *Tri-State Pain Institute LLC*<br>*The business debts are greater than the business assets. Assets are approximately $2.07m; Debts are approximately $7.95m.*<br>*100%*<br>Line from *Schedule A/B*: **19.3** | $1.00 | ■ $1.00<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(5)* |
| *401(k): 401(k) w/ Mass Mutual - CoAdvantage Corporation, Retirement Savings Plan*<br>Line from *Schedule A/B*: **21.1** | $29,000.00 | ■ $29,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(12)* |
| *Medical Licenses*<br>*1) Medical Doctor (Expires 10/1/2020) (OH)*<br>*2) Medical Physician and Surgeon (Expires 12/31/2020) (PA)*<br>*3) Doctor (Expires 7/31/2020) (NY)*<br>Line from *Schedule A/B*: **27.1** | $1.00 | ■ $1.00<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(5)* |
| *Social Security Benefits*<br>Line from *Schedule A/B*: **30.1** | $1.00 | ■ $1.00<br>☐ 100% of fair market value, up to any applicable statutory limit | *42 U.S.C. § 407* |
| *Insurance Policy through Knights of Columbus in the face amount of $5,000.00.*<br>Line from *Schedule A/B*: **31.1** | $21,377.25 | ■ $13,400.00<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(8)* |
| *Two Professional Liability Insurance Policies - Physician Policies: NORCAL Mutual Insurance Company (2017 and 2018 through June 28, 2018)*<br>*Beneficiary: Not applicable.*<br>Line from *Schedule A/B*: **31.2** | $1.00 | ■ $1.00<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(5)* |

3. **Are you claiming a homestead exemption of more than $170,350?**
(Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.)

■ No

☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

    ☐ No

    ☐ Yes

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

| Line No. | | Description | | As of Petition Date | | Updated | | Future Estimated next 6 months | | Future Estimated (Less Real Estate) following 6 months |
|---|---|---|---|---|---|---|---|---|---|---|
| Schedule I | | | | | | | | | | |
| 7 | | Monthly take-home pay | | 19,800.00 | | 19,800.00 | | 16,500.00 | | 16,500.00 |
| 8e. | | Social Security | | 2,127.60 | | 2,171.60 | | 2,192.90 | | 2,192.90 |
| | | | | | | | | 18,692.90 | | 18,692.90 |
| | | | | | | | | | | |
| Schedule J | | | | | | | | | | |
| 4. | | Rent | | 800.00 | | 800.00 | | 867.00 | | 867.00 |
| 4b. | | Homeowner's Insurance | | 422.50 | | 422.50 | | 428.00 | | 40.00 |
| 4c. | | Maintenance/repairs | | 835.00 | | 130.00 | | 150.00 | | 40.00 |
| 6a. | | Electric/heat/gas | | 350.00 | | 375.00 | | 200.00 | | 0.00 |
| 6b. | | Water/sewer/garbage | | 95.00 | | 252.00 | | 252.00 | | 0.00 |
| 6c. | | Phone/internet/cable | | 211.00 | | 211.00 | | 216.00 | | 0.00 |
| 7. | | Food/housekeeping | | 800.00 | | 800.00 | | 800.00 | | 800.00 |
| 9. | | Clothing/laundry | | 150.00 | | 150.00 | | 150.00 | | 150.00 |
| 10. | | Personal care products/services | | 150.00 | | 150.00 | | 150.00 | | 150.00 |
| 11. | | Medical/dental | | 590.00 | | 1,000.00 | | 750.00 | | 750.00 |
| 12. | | Transportation | | 375.00 | | 430.00 | | 375.00 | | 375.00 |
| 13. | | Entertainment/newspapers/books | | 411.00 | | 411.00 | | 411.00 | | 411.00 |
| 15b. | | Health insurance | | 262.00 | | 270.00 | | 272.00 | | 272.00 |
| 15c. | | Vehicle insurance | | 395.00 | | 315.00 | | 248.00 | | 248.00 |
| 16. | | Taxes - Internal Revenue Service | | 8,500.00 | | 4,600.00 | | 4,600.00 | | 4,000.00 |
| 16. | | Taxes - PA Revenue Service | | 2,429.28 | | 500.00 | | 500.00 | | 750.00 |
| 16. | | Taxes - Local Services Tax | | 4.34 | | 4.34 | | 4.34 | | 200.00 |
| 17a. | | Car payments - Vehicle 1 | | 1,018.86 | | 0.00 | | 0.00 | | 0.00 |
| 17b. | | Car payments - Vehicle 2 | | 0.00 | | 832.80 | | 832.80 | | 832.80 |
| 20c. | | Property insurance | | 316.67 | | 316.67 | | 0.00 | | 0.00 |
| 21. | | Bank fees | | 10.00 | | 13.00 | | 15.00 | | 15.00 |
| 21. | | Subscriptions/LECOM & Sirius XM | | 60.00 | | 74.00 | | 132.00 | | 132.00 |
| 21. | | Housekeeping fees | | 300.00 | | 190.00 | | 350.00 | | 0.00 |
| 21. | | Landscaping | | 1,315.00 | | 920.00 | | 920.00 | | 90.00 |
| 21. | | Professional fees | | 3,000.00 | | 5,000.00 | | 3,000.00 | | 3,000.00 |
| 21. | | Security system | | 38.50 | | 38.50 | | 38.50 | | 0.00 |
| 21. | | Gifts | | 200.00 | | 250.00 | | 425.00 | | 425.00 |
| 21. | | Personal Catastrophe Insurance | | 14.25 | | 14.25 | | 26.00 | | 26.00 |
| 21. | | Personal Inland Marine | | 70.75 | | 70.75 | | 81.00 | | 81.00 |
| | add | Reserve for post-petition taxes | | | | | | | | 1,500.00 |
| | add | 401(k) Contributions | | | | | | 2,192.90 | | 2,192.90 |
| Totals | | | | 23,124.15 | | 18,540.81 | | 18,386.54 | | 17,347.70 |

# Standard Checking Statement

PNC Private Banking

**PNC BANK**

| | |
|---|---|
| **For the period 02/04/2021 to 03/03/2021** | Primary account number: ███ 3191 |
| | Page 1 of 2 |
| | Number of enclosures: 0 |

002194                    000004619    UZ
JOSEPH THOMAS MD   CASE# 20-10334
DEBTOR IN POSSESSION
2374 VILLAGE COMMON DR STE 100
ERIE PA 16506-7201

For 24-hour banking, and transaction or interest rate information, sign on to PNC Bank Online Banking at pnc.com.

Inquiries? Call PNC Private Banking 1-888-762-6226
 For Customers who are Deaf or Hard of Hearing

TDD terminal: 1-800-531-1648
Monday - Friday: 7 AM - 10 PM ET
Saturday & Sunday:  8 AM - 5 PM ET

Para servicio en español, 1-866-HOLA-PNC

**Moving?**  Please contact us at 1-888-762-6226

Write to: PNC Private Banking
PO Box 609
Pittsburgh PA 15230-9738

Visit us at PNC.com

## Standard Checking Account Summary

Account number: ███ 3191

JOSEPH THOMAS MD  CASE# 20-10334
DEBTOR IN POSSESSION

**Overdraft Protection** has not been established for this account.
 Please contact us if you would like to set up this service.

### Balance Summary

| Beginning balance | Deposits and other additions | Checks and other deductions | Ending balance |
|---|---|---|---|
| 10,200.00 | 10,200.00 | .00 | 20,400.00 |

| | | Average monthly balance | Charges and fees |
|---|---|---|---|
| | | 16,392.85 | .00 |

## Activity Detail

### Deposits and Other Additions

There were 2 Deposits and Other Additions totaling **$10,200.00**.

| Date | Amount | Description |
|---|---|---|
| 02/08 | 5,100.00 | Online Transfer From ████████ |
| 02/22 | 5,100.00 | Online Transfer From ████████ |

### Daily Balance Detail

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 02/04 | 10,200.00 | 02/08 | 15,300.00 | 02/22 | 20,400.00 |

## Reviewing Your Statement

Please review this statement carefully and reconcile it with your records.  Call the telephone number on the upper right side of the first page of this statement if:
* you have any questions regarding your account(s);
* your name or address is incorrect;
* you have any questions regarding interest paid to an interest-bearing account.

## Balancing Your Account

### Update Your Account Register

| | |
|---|---|
| **Compare:** | The activity detail section of your statement to your account register. |
| **Check Off:** | All items in your account register that also appear on your statement.  Remember to begin with the ending date of your last statement.  (An asterisk {*} will appear in the Checks section if there is a gap in the listing of consecutive check numbers.) |
| **Add to Your Account Register Balance:** | Any deposits or additions including interest payments and ATM or electronic deposits listed on the statement that are not already entered in your register. |
| **Subtract From Your Account Register Balance:** | Any account deductions including fees and ATM or electronic deductions listed on the statement that are not already entered in your register. |

## Update Your Statement Information

**Step 1:**
Add together deposits and other additions listed in your account register but not on your statement.

| Date of Deposit | Amount |
|---|---|
| | |
| | |
| | |
| | |
| | |
| **Total A** | |

**Step 2:**
Add together checks and other deductions listed in your account register but not on your statement.

| Check Number or Deduction Description | Amount |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total B** | |

**Step 3:**

Enter the ending balance recorded on your statement                                $ _____

Add deposits and other additions not recorded         Total A + $ _____

Subtotal= $ _____

Subtract checks and other deductions not recorded Total B -  $ _____

The result should equal your account register balance        = $ _____

## Verification of Direct Deposits

To verify whether a direct deposit or other transfer to your account has occurred, call us Monday - Friday: 7 AM - 10 PM ET and Saturday & Sunday: 8 AM - 5 PM ET at the customer service number listed on the upper right side of the first page of this statement.

## In Case of Errors or Questions About Your Electronic Transfers

Telephone us at the customer service number listed on the upper right side of the first page of this statement or write us at PNC Bank Debit Card Services, 500 First Avenue, 4th Floor, Mailstop P7-PFSC-04-M, Pittsburgh, PA 15219 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

   (1) Tell us your name and account number (if any).
   (2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
   (3) Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

Member FDIC                            Equal Housing Lender

# Performance Select Statement

PNC Private Banking

 **PNC BANK**

**For the period 02/06/2021 to 03/05/2021**

000009                                      000000232    UZ
JOSEPH M THOMAS MD CASE# 20-10334
DEBTOR IN POSSESSION
2374 VILLAGE COMMON DR STE 100
ERIE PA 16506-7201

Primary account number [███]-6352
Page 1 of 6
Number of enclosures: 0

For 24-hour banking, and transaction or
interest rate information, sign on to
PNC Bank Online Banking at pnc.com.
Inquiries? Call PNC Private Banking 1-888-762-6226
    For Customers who are Deaf or Hard of Hearing

TDD terminal: 1-800-531-1648
Monday - Friday: 7 AM - 10 PM ET
Saturday & Sunday:  8 AM - 5 PM ET

Para servicio en español, 1-866-HOLA-PNC

**Moving?**  Please contact us at 1-888-762-6226

Write to: PNC Private Banking
PO Box 609
Pittsburgh PA 15230-9738

Visit us at PNC.com

## Performance Select
## Interest Checking Account Summary

JOSEPH M THOMAS MD CASE# 20-10334
DEBTOR IN POSSESSION

**Account number:** [███]6352

**Overdraft Protection** has not been established for this account.
    Please contact us if you would like to set up this service.

### Balance Summary

| Beginning balance | Deposits and other additions | Checks and other deductions | Ending balance |
|---|---|---|---|
| 20,936.29 | 30,000.13 | 33,612.07 | 17,324.35 |

| | | Average monthly balance | Charges and fees |
|---|---|---|---|
| | | 16,958.37 | .00 |

### Transaction Summary

| Checks paid/ withdrawals | Debit Card POS signed transactions | Debit Card/Bankcard POS PIN transactions |
|---|---|---|
| 24 | 6 | 0 |

| Total ATM transactions | PNC Bank ATM transactions | Other Bank ATM transactions |
|---|---|---|
| 4 | 4 | 0 |

### Interest Summary

| Annual Percentage Yield Earned (APYE) | Number of days in interest period | Average collected balance for APYE | Interest Earned this period |
|---|---|---|---|
| 0.01% | 28 | 16,958.37 | .13 |

As of 03/05, a total of **$.36** in interest was
paid this year.

## Activity Detail

### Deposits and Other Additions

There were 3 Deposits and Other Additions
totaling **$30,000.13**.

| Date | Amount | Description |
|---|---|---|
| 02/16 | 15,000.00 | Deposit Reference No.  030401358 |
| 03/02 | 15,000.00 | Deposit Reference No.  032071799 |
| 03/05 | .13 | Interest Payment |



# Performance Select Statement

🖥 For 24-hour information, sign on to PNC Bank Online Banking on pnc.com.

**For the period 02/06/2021 to 03/05/2021**
JOSEPH M THOMAS MD CASE# 20-10334
Primary account number ████6352
Page 2 of 6

Account number: ████6352 - continued

## Checks and Substitute Checks

| Check number | Amount | Date paid | Reference number | Check number | Amount | Date paid | Reference number |
|---|---|---|---|---|---|---|---|
| 3878 | 4,600.00 | 02/22 | 077291427 | 3911 | 24.00 | 02/24 | 070773831 |
| 3887 * | 13.00 | 02/16 | 070743227 | 3912 | 47.45 | 02/25 | 071902114 |
| 3894 * | 832.80 | 02/08 | 070414856 | 3914 * | 86.00 | 02/25 | 072616323 |
| 3899 * | 200.00 | 02/09 | 073408645 | 3916 * | 150.00 | 03/02 | 070156815 |
| 3900 | 174.90 | 02/11 | 075654421 | 3919 * | 172.00 | 03/04 | 072218310 |
| 3902 * | 170.00 | 02/19 | 075059965 | 3920 | 310.22 | 03/04 | 072218238 |
| 3903 | 45.00 | 02/26 | 073843168 | 3921 | 102.67 | 03/04 | 072218331 |
| 3904 | 200.00 | 02/17 | 072259258 | 3922 | 76.54 | 03/05 | 073824014 |
| 3905 | 200.00 | 02/19 | 074119589 | 3923 | 143.10 | 03/05 | 074027224 |
| 3907 * | 4,600.00 | 03/05 | 073738375 | 3924 | 43.00 | 03/05 | 073425352 |
| 3909 * | 5,000.00 | 02/19 | 074793240 | 3926 * | 480.00 | 03/05 | 074055876 |
| 3910 | 200.00 | 02/23 | 070580127 | 3927 | 1,126.64 | 03/04 | 072577658 |

* Gap in check sequence

There were 24 checks listed totaling **$18,997.32**.

## Banking/Debit Card Withdrawals and Purchases

| Date | Amount | Description |
|---|---|---|
| 02/08 | 41.31 | 1794 Recurring Debit Card Apple.Com/Bill |
| 02/12 | 400.00 | ATM Withdrawal 2069 Interchange R Erie PA |
| 02/16 | 3.17 | 1794 Recurring Debit Card Apple.Com/Bill |
| 02/19 | 400.00 | ATM Withdrawal 2069 Interchange R Erie PA |
| 02/22 | 3.17 | 1794 Recurring Debit Card Apple.Com/Bill |
| 02/23 | .99 | 1794 Recurring Debit Card Apple.Com/Bill |
| 02/26 | 400.00 | ATM Withdrawal 2069 Interchange R Erie PA |
| 03/01 | 56.16 | 1794 Debit Card Purchase Apple.Com/Bill |
| 03/05 | 10.59 | 1794 Recurring Debit Card Apple.Com/Bill |
| 03/05 | 400.00 | ATM Withdrawal 2069 Interchange R Erie PA |

There were 4 Banking Machine withdrawals totaling **$1,600.00**.

There were 6 other Banking Machine/Debit Card deductions totaling **$115.39**.

## Online and Electronic Banking Deductions

| Date | Amount | Description |
|---|---|---|
| 02/08 | 5,100.00 | Online Transfer To ████████ |
| 02/16 | 67.54 | Payment,E-Check Check Pymt Penelec 3901 |
| 02/17 | 2,275.00 | Web Pmt Single - Payment Quarterly Fee 6O76P3Tkeb1 |
| 02/19 | 197.01 | Payment,E-Check Check Pymt Charter Midwest 3906 |
| 02/22 | 5,100.00 | Online Transfer To ████████ |
| 02/25 | 159.81 | Payment,E-Check Checkpaymt Natfuel Box 4103 3913 |

There were 6 Online or Electronic Banking Deductions totaling **$12,899.36**.

## Daily Balance Detail

| Date | Balance | Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|---|---|
| 02/06 | 20,936.29 | 02/16 | 29,103.57 | 02/24 | 10,733.40 | 03/04 | 23,077.45 |
| 02/08 | 14,962.18 | 02/17 | 26,628.57 | 02/25 | 10,440.14 | 03/05 | 17,324.35 |
| 02/09 | 14,762.18 | 02/19 | 20,661.56 | 02/26 | 9,995.14 | | |
| 02/11 | 14,587.28 | 02/22 | 10,958.39 | 03/01 | 9,938.98 | | |
| 02/12 | 14,187.28 | 02/23 | 10,757.40 | 03/02 | 24,788.98 | | |

# Performance Select Statement

**PNC BANK**

For 24-hour information, sign on to PNC Bank Online Banking
on pnc.com.

For the period 02/06/2021 to 03/05/2021
JOSEPH M THOMAS MD CASE# 20-10334
Primary account number: ████ 6352
Page 3 of 6

## Check Images

| 3878 | $4,600.00 | 02/22/2021 |
| 3887 | $13.00 | 02/16/2021 |
| 3894 | $832.80 | 02/08/2021 |
| 3899 | $200.00 | 02/09/2021 |
| 3900 | $174.90 | 02/11/2021 |
| 3902 | $170.00 | 02/19/2021 |
| 3903 | $45.00 | 02/26/2021 |
| 3904 | $200.00 | 02/17/2021 |
| 3905 | $200.00 | 02/19/2021 |
| 3907 | $4,600.00 | 03/05/2021 |

Check Images continued on next page.

# Performance Select Statement

For 24-hour information, sign on to PNC Bank Online Banking
on pnc.com.

**For the period 02/06/2021 to 03/05/2021**
JOSEPH M THOMAS MD CASE# 20-10334
Primary account number: ███████6352
Page 4 of 6

## Check Images - *continued*



| 3909 | $5,000.00 | 02/19/2021 |



| 3910 | $200.00 | 02/23/2021 |



| 3911 | $24.00 | 02/24/2021 |



| 3912 | $47.45 | 02/25/2021 |



| 3914 | $86.00 | 02/25/2021 |



| 3916 | $150.00 | 03/02/2021 |



| 3919 | $172.00 | 03/04/2021 |



| 3920 | $310.22 | 03/04/2021 |



| 3921 | $102.67 | 03/04/2021 |



| 3922 | $76.54 | 03/05/2021 |

Check Images continued on next page

# Performance Select Statement

⊘ PNC BANK

🖥 For 24-hour information, sign on to PNC Bank Online Banking
on pnc.com.

**For the period 02/06/2021 to 03/05/2021**
JOSEPH M THOMAS MD CASE# 20-10334
Primary account number ████ 6352
Page 5 of 6

---

## Check Images - *continued*



| 3923 | $143.10 | 03/05/2021 |
| 3924 | $43.00 | 03/05/2021 |
| 3926 | $480.00 | 03/05/2021 |
| 3927 | $1,126.64 | 03/04/2021 |

With PNC Online Banking, you can view, print and save up to the most recent 90 days of your canceled checks - front and back - FREE of charge. Please contact us for additional options.

## Reviewing Your Statement

Please review this statement carefully and reconcile it with your records. Call the telephone number on the upper right side of the first page of this statement if:
* you have any questions regarding your account(s);
* your name or address is incorrect;
* you have any questions regarding interest paid to an interest-bearing account.

## Balancing Your Account

### Update Your Account Register

**Compare:** The activity detail section of your statement to your account register.

**Check Off:** All items in your account register that also appear on your statement. Remember to begin with the ending date of your last statement. (An asterisk {*} will appear in the Checks section if there is a gap in the listing of consecutive check numbers.)

**Add to Your Account Register Balance:** Any deposits or additions including interest payments and ATM or electronic deposits listed on the statement that are not already entered in your register.

**Subtract From Your Account Register Balance:** Any account deductions including fees and ATM or electronic deductions listed on the statement that are not already entered in your register.

## Update Your Statement Information

**Step 1:**
Add together deposits and other additions listed in your account register but not on your statement.

| Date of Deposit | Amount |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| **Total A** |  |

**Step 2:**
Add together checks and other deductions listed in your account register but not on your statement.

| Check Number or Deduction Description | Amount |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| **Total B** |  |

**Step 3:**

Enter the ending balance recorded on your statement    $ _____

Add deposits and other additions not recorded    Total A + $ _____

Subtotal= $ _____

Subtract checks and other deductions not recorded  Total B - $ _____

The result should equal your account register balance    = $ _____

## Verification of Direct Deposits

To verify whether a direct deposit or other transfer to your account has occurred, call us Monday - Friday: 7 AM - 10 PM ET and Saturday & Sunday: 8 AM - 5 PM ET at the customer service number listed on the upper right side of the first page of this statement.

## In Case of Errors or Questions About Your Electronic Transfers

Telephone us at the customer service number listed on the upper right side of the first page of this statement or write us at PNC Bank Debit Card Services, 500 First Avenue, 4th Floor, Mailstop P7-PFSC-04-M, Pittsburgh, PA 15219 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

(1) Tell us your name and account number (if any).
(2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
(3) Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

Member FDIC                    Equal Housing Lender

# Performance Select Statement
PNC Private Banking

 PNC BANK

**For the period 02/06/2021 to 03/05/2021**

002070                           000000209   UZ
JOSEPH M THOMAS MD CASE# 20-10334
DEBTOR IN POSSESSION
2374 VILLAGE COMMON DR STE 100
ERIE PA 16506-7201

Primary account number ████6807
Page 1 of 3
Number of enclosures: 0

For 24-hour banking, and transaction or interest rate information, sign on to PNC Bank Online Banking at pnc.com.

Inquiries? Call PNC Private Banking 1-888-762-6226
For Customers who are Deaf or Hard of Hearing

TDD terminal: 1-800-531-1648
Monday - Friday: 7 AM - 10 PM ET
Saturday & Sunday:  8 AM - 5 PM ET

Para servicio en español, 1-866-HOLA-PNC

**Moving?**  Please contact us at 1-888-762-6226

Write to: PNC Private Banking
PO Box 609
Pittsburgh PA 15230-9738

Visit us at PNC.com

## IMPORTANT ACCOUNT INFORMATION FOR ALL CONSUMER SAVINGS & MONEY MARKET CUSTOMERS

The information below amends certain information in our Consumer Schedule of Service Charges and Fees (Schedule) and our Virtual Wallet Features and Fees (Schedule). All other information in our Schedule continues to apply to your account. Please read this information and retain it with your records.

Effective June 13, 2021, the Transaction Limit Fee will be $3.00 per transaction in excess of the permissible number of transactions from a savings or money market account within the monthly service charge period.

If you make more than a total of six (6) transfers each service charge period from a savings or money market account to other accounts (including transfers to another account for overdraft protection) or to third parties by check, through point-of sale purchase transactions or similar debit card transactions, by pre-authorized or automatic agreements, telephone, online or similar order payable to a third person, fees will apply. See your account agreement and fee schedule for more information. Other limits may apply to your account. We reserve the right to suspend enforcement of these transaction limitations, at our discretion.
If you have any questions, please feel free to visit your local PNC Branch or Solution Center or call the Customer Care Center at 1-888-762-2265.

## Performance Select
## Premium Money Market Account Summary

JOSEPH M THOMAS MD CASE# 20-10334
DEBTOR IN POSSESSION

Account number: ████6807

### Balance Summary

| Beginning balance | Deposits and other additions | Checks and other deductions | Ending balance |
|---|---|---|---|
| 28,320.05 | 2,193.12 | .00 | 30,513.17 |

| | | Average monthly balance | Charges and fees |
|---|---|---|---|
| | | 29,103.23 | .00 |

### Interest Summary

As of 03/05, a total of **$.66** in interest was paid this year.

| Annual Percentage Yield Earned (APYE) | Number of days in interest period | Average collected balance for APYE | Interest Earned this period |
|---|---|---|---|
| 0.01% | 28 | 29,103.23 | .22 |



# Performance Select Statement

🖥 For 24-hour information, sign on to PNC Bank Online Banking
on pnc.com.

**For the period 02/06/2021 to 03/05/2021**
JOSEPH M THOMAS MD CASE# 20-10334
Primary account number ████ 6807
Page 2 of 3

Account number ████ 6807 - continued

## Activity Detail

### Deposits and Other Additions

There were 2 Deposits and Other Additions
totaling **$2,193.12**.

| Date | Amount | Description |
|---|---|---|
| 02/24 | 2,192.90 | Direct Deposit - Xxsoc Sec |
|  |  | SSA Treas ████ |
| 03/05 | .22 | Interest Payment |

### Daily Balance Detail

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 02/06 | 28,320.05 | 02/24 | 30,512.95 | 03/05 | 30,513.17 |



## Reviewing Your Statement

Please review this statement carefully and reconcile it with your records. Call the telephone number on the upper right side of the first page of this statement if:

* you have any questions regarding your account(s);
* your name or address is incorrect;
* you have any questions regarding interest paid to an interest-bearing account.

## Balancing Your Account

### Update Your Account Register

| | |
|---|---|
| **Compare:** | The activity detail section of your statement to your account register. |
| **Check Off:** | All items in your account register that also appear on your statement. Remember to begin with the ending date of your last statement. (An asterisk {*} will appear in the Checks section if there is a gap in the listing of consecutive check numbers.) |
| **Add to Your Account Register Balance:** | Any deposits or additions including interest payments and ATM or electronic deposits listed on the statement that are not already entered in your register. |
| **Subtract From Your Account Register Balance:** | Any account deductions including fees and ATM or electronic deductions listed on the statement that are not already entered in your register. |

## Update Your Statement Information

**Step 1:**
Add together deposits and other additions listed in your account register but not on your statement.

| Date of Deposit | Amount |
|---|---|
| | |
| | |
| | |
| | |
| | |
| **Total A** | |

**Step 2:**
Add together checks and other deductions listed in your account register but not on your statement.

| Check Number or Deduction Description | Amount |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total B** | |

**Step 3:**

Enter the ending balance recorded on your statement $ _____

Add deposits and other additions not recorded   Total A + $ _____

Subtotal= $ _____

Subtract checks and other deductions not recorded   Total B - $ _____

The result should equal your account register balance   = $ _____

## Verification of Direct Deposits

To verify whether a direct deposit or other transfer to your account has occurred, call us Monday - Friday: 7 AM - 10 PM ET and Saturday & Sunday: 8 AM - 5 PM ET at the customer service number listed on the upper right side of the first page of this statement.

## In Case of Errors or Questions About Your Electronic Transfers

Telephone us at the customer service number listed on the upper right side of the first page of this statement or write us at PNC Bank Debit Card Services, 500 First Avenue, 4th Floor, Mailstop P7-PFSC-04-M, Pittsburgh, PA 15219 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

(1) Tell us your name and account number (if any).
(2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
(3) Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

**Member FDIC**        Equal Housing Lender